**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

OKLAHOMA PLAZA INVESTORS,

 Plaintiff-Appellant,

v.

WAL-MART STORES, INC.,

 Defendant-Appellee.

No. 97-5163

---

ORDER

Filed May 1, 2006

---

Upon consideration of the appellee's motion to publish the order and judgment originally filed July 1, 1998, the motion is granted. The published opinion is attached to this order.

         Entered for the Court
         Patrick Fisher, Clerk of Court


         By:
           Trish Lane, Deputy Clerk

**PUBLISH**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

OKLAHOMA PLAZA INVESTORS,

     Plaintiff-Appellant,

v.

WAL-MART STORES, INC.,

     Defendant-Appellee.

No. 97-5163

---

Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 96-CV-877)

---

On the Briefs:

Daniel Woska and Stephen Martin, of A. Daniel Woska, P.C., Oklahoma City, Oklahoma,
for Plaintiff-Appellant.

Jon B. Comstock, Bentonville, Arkansas, for Defendant-Appellee.

---

Before **SEYMOUR**, Chief Judge, **BRORBY** and **BRISCOE**, Circuit Judges.

---

**SEYMOUR**, Chief Judge.

Oklahoma Plaza Investors, Ltd. (OPI), the lessor, brought suit against Wal-Mart, the lessee, for breach of express and implied terms of a commercial lease and tortious breach of the covenant of good faith and fair dealing. The district court granted Wal-Mart's motion for summary judgment and denied OPI's cross-motion. OPI appeals and we affirm.[1]

We review the district court's grant of summary judgment de novo. See Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). In 1974 Wal-Mart entered into a 20-year lease with OPI's predecessor in interest to rent premises in a shopping center in Shawnee, Oklahoma. The lease includes the following pertinent provisions:

(a)     a fixed annual rent of $ 102,800 and an additional percentage of gross sales if the sales reach a certain level, Aplt. App. at 811, amending 798;

(b)     a use clause stating that "[i]t is understood and agreed that the premises being leased will be used by the Lessee in operation of a discount store, but Lessor agrees the store may be used for any lawful purpose other than the operation of a supermarket," id. at 816;

(c)     a default clause which provides that "[i]f the demised premises shall be

---

[1]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

deserted or vacated, . . . this lease, if the Lessor so elects, shall thereupon become null and void, and the Lessor shall have the right to reenter or repossess the leased property," id. at 803-04;

(d)     a right "at any time" to assign or sublet the lease, id. at 804;

(e)     a right "at any time" to "remove any and all fixtures, goods and equipment installed by it in or on the premises," id. at 805; and

(f)     a right, which extends to any of Wal-Mart's assignees or sublessees, to make alterations to the premises for business purposes, id. at 806.

Wal-Mart ceased operating a discount store on the premises in February 1989, when Wal-Mart assigned the lease to Shawnee Mall Associates Limited Partnership (SMALP) and moved to another location in Shawnee. The premises remained empty for over two years until the summer of 1991, when SMALP found new tenants. However, Wal-Mart continued to pay the fixed minimum rent and keep current on all financial obligations under the lease.

The parties agree that the terms of the lease are unambiguous and that under Oklahoma law "its language is the only legitimate evidence of what the parties intended." Mercury Inv. Co. v. F.W. Woolworth Co., 706 P.2d 523, 529 (Okla. 1985). OPI contends that by moving out Wal-Mart breached: (1) the express language of the lease; (2) an implied covenant to operate a discount store; and (3) an implied covenant of good faith

and fair dealing.

We recently decided a case, which controls here, raising similar claims and interpreting a virtually identical Wal-Mart lease under Oklahoma law. In <u>United Assocs., Inc. v. Wal-Mart</u>, 133 F.3d 1296, 1298 (10th Cir. 1997), we held Wal-Mart did not "desert" the premises when, as here, the lease clearly permitted Wal-Mart to remove its goods and allow an assignee or sublessee to move in and use the premises for any purpose other than a supermarket. <u>Id.</u>; <u>see also</u> <u>Scot Properties, Ltd. v. Wal-Mart Stores, Inc.</u>, 138 F.3d 571, 573-74 (5th Cir. 1998). We further held the express terms of the lease precluded implying an obligation of continuous use or concluding Wal-Mart breached an implied covenant of good faith. <u>United</u>, 133 F.3d at 1298; <u>see also</u> <u>Scot</u>, 138 F.3d at 575-76.

OPI points out that the default clause here is triggered if the premises are "deserted or vacated," while the <u>United</u> lease referred only to desertion. OPI asserts Wal-Mart defaulted on the lease by vacating the premises, even if under <u>United</u> Wal-Mart could not have defaulted by desertion. OPI's attempts to distinguish <u>United</u> are unavailing. Although some courts have relied on a distinction between "vacate" and "desert" in determining that a lessee has defaulted, we do not find their reasoning persuasive when applied to the specific terms of this lease.[2] The lease here gives Wal-

_____

[2] In <u>PRC Kentron, Inc. v. First City Ctr. Assocs. II</u>, 762 S.W.2d 279 (Tex. Ct. App. 1988), the court held that a tenant who moved out of the premises breached the express terms of a lease which provided for default if the tenant "deserts or vacates" the premises. <u>Id.</u> at 283. The court said that while the ordinary meaning of "desert" includes an intent to forsake permanently, "vacate" does not. <u>Id.</u> at 282. The court therefore concluded "the lease clearly provides that

(continued...)

Mart the right to use the premises for any purpose except as a supermarket, to sublease or assign the premises without the consent of OPI, and to remove its goods at any time. Wal-Mart exercised these rights, and we hold that Wal-Mart cannot "vacate" within the meaning of this lease by doing what the lease expressly provides.

OPI next contends several courts have found an implied covenant of continuous use, even in the face of an express right to assign or sublet, where the minimum base rent is insubstantial in relation to the percentage rent. We need not address OPI's assertions that the minimum base rent here is insubstantial, however, because the cases OPI cites are easily distinguishable. All the leases in those cases contain sublease or assignment clauses requiring the landlords' consent, or use clauses which severely restrict sublessees' or assignees' right to use the premises. See Larew v. Hooks-SupeRx, 905 F. Supp. 401, 406 (E.D. Ky. 1995) ("sublease term is so narrowly tailored that it implies that some suitable replacement business would occupy the leased space"); Pequot Spring Water Co. v. Brunelle, 698 A.2d 920, 924 (Conn. App. Ct.) (lessor's "retained . . . right to refuse a sublease implies . . . a suitable replacement business would occupy [premises]"), cert. granted, 701 A.2d 658 (Conn. 1997); East Broadway Corp. v. Taco Bell Corp., 542

---

[2](...continued)
tenant is in default if it moves out, regardless of how long it is gone, whether it intends to return, and whether it pays rent in the meantime." Id. at 283. The court found support for its conclusion that the "parties intended that Tenant's moving out without Landlord's consent would be in breach of the lease" in the sublease clause, which required the tenant to obtain the landlord's consent. Id. As discussed above, the sublease provision here differs drastically and does not require the lessor's consent.

N.W.2d 816, 820 (Iowa 1996) (use clause restricting lessee to "sale of Mexican foods" and assignment clause requiring "written approval of the lessor" did not constitute "a general right to assign negating an implied covenant for continued operation"). The broad assignment and use clauses in the lease here cannot be harmonized or read consistently with an implied covenant of continuous use.[3]

We **AFFIRM** the district court.

---

[3] Finally, we do not reach whether the default clause is a condition subsequent or a covenant. Because we hold Wal-Mart did not vacate the premises within the meaning of the lease, we need not determine what the precise consequences of vacating are.

F I L E D
United States Court of Appeals
Tenth Circuit

JUL 1 1998

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

OKLAHOMA PLAZA INVESTORS, LTD.,

    Plaintiff-Appellant,

v.

WAL-MART STORES, INC.,

    Defendant-Appellee.

No. 97-5163
(D.C. No. 96-CV-877)
(NOK)

## ORDER AND JUDGMENT[****]

Before **SEYMOUR**, Chief Judge, **BRORBY** and **BRISCOE**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

Oklahoma Plaza Investors, Ltd. (OPI), the lessee, brought suit against Wal-Mart, the lessor, for breach of express and implied terms of a commercial lease and tortious breach of the covenant of good faith and fair dealing. The district court granted Wal-Mart's motion for summary judgment and denied OPI's cross-motion. OPI appeals. We review the district court's grant of summary judgment de novo. See Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996).

---

[****]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, or collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

In 1974 Wal-Mart entered into a 20-year lease with OPI's predecessor in interest to rent premises in a shopping center in Shawnee, Oklahoma. The lease includes the following pertinent provisions:

(g)     a fixed annual rent of $ 102,800 and an additional percentage of gross sales if the sales reach a certain level, Aplt. App. at 811, amending 798;

(h)     a use clause stating that "[i]t is understood and agreed that the premises being leased will be used by the Lessee in operation of a discount store, but Lessor agrees the store may be used for any lawful purpose other than the operation of a supermarket," id. at 816;

(i)     a default clause which provides that "[i]f the demised premises shall be deserted or vacated, . . . this lease, if the Lessor so elects, shall thereupon become null and void, and the Lessor shall have the right to reenter or repossess the leased property," id. at 803-04;

(j)     a right "at any time" to assign or sublet the lease, id. at 804;

(k)     a right "at any time" to "remove any and all fixtures, goods and equipment installed by it in or on the premises," id. at 805; and

(l)     a right, which extends to any of Wal-Mart's assignees or sublessees, to make alterations to the premises for business purposes, id. at 806.

Wal-Mart ceased operating a discount store on the premises in February 1989, when Wal-Mart assigned the lease to Shawnee Mall Associates Limited Partnership (SMALP) and moved to another location in Shawnee. The premises remained empty for over two years until the summer of 1991, when SMALP found new tenants. However, Wal-Mart continued to pay the fixed minimum rent and keep current on all financial obligations under the lease.

The parties agree that the terms of the lease are unambiguous and that under Oklahoma law "its language is the only legitimate evidence of what the parties intended." Mercury Inv. Co. v. F.W. Woolworth Co., 706 P.2d 523, 529 (Okla. 1985). OPI contends that by moving out Wal-Mart breached: (1) the express language of the lease; (2) an implied covenant to operate a discount store; and (3) an implied covenant of good faith and fair dealing.

We recently decided a case, which controls here, raising similar claims and interpreting a

virtually identical Wal-Mart lease under Oklahoma law. In <u>United Assocs., Inc. v. Wal-Mart</u>, 133 F.3d 1296, 1298 (10th Cir. 1997), we held Wal-Mart did not "desert" the premises when, as here, the lease clearly permitted Wal-Mart to remove its goods and allow an assignee or sublessee to move in and use the premises for any purpose other than a supermarket. <u>Id.</u>; <u>see also</u> <u>Scot Properties, Ltd. v. Wal-Mart Stores, Inc.</u>, 138 F.3d 571, 573-74 (5th Cir. 1998). We further held the express terms of the lease precluded implying an obligation of continuous use or concluding Wal-Mart breached an implied covenant of good faith. <u>United</u>, 133 F.3d at 1298; <u>see also</u> <u>Scot</u>, 138 F.3d at 575-76.

OPI's attempts to distinguish <u>United</u> are unavailing. OPI points out that the default clause here is triggered if the premises are "deserted or vacated," while the <u>United</u> lease referred only to desertion. OPI asserts Wal-Mart defaulted on the lease by vacating the premises, even if under <u>United</u> Wal-Mart could not have defaulted by desertion. Although some courts have relied on a distinction between "vacate" and "desert" in determining that a lessee has defaulted, we do not find their reasoning persuasive when applied to the specific terms of this lease.[1] The lease here gives Wal-Mart the right to use the premises for any purpose except as a supermarket, to sublease or assign the premises without the consent of OPI, and to remove its goods at any time.

---

[1] In <u>PRC Kentron, Inc. v. First City Ctr. Assocs. II</u>, 762 S.W.2d 279 (Tex. Ct. App. 1988), the court held that a tenant who moved out of the premises breached the express terms of a lease which provided for default if the tenant "deserts or vacates" the premises. <u>Id.</u> at 283. The court said that while the ordinary meaning of "desert" includes an intent to forsake permanently, "vacate" does not. <u>Id.</u> at 282. The court therefore concluded "the lease clearly provides that tenant is in default if it moves out, regardless of how long it is gone, whether it intends to return, and whether it pays rent in the meantime." <u>Id.</u> at 283. The court found support for its conclusion that the "parties intended that Tenant's moving out without Landlord's consent would be in breach of the lease" in the sublease clause, which required the tenant to obtain the landlord's consent. <u>Id.</u> As discussed above, the sublease provision here differs drastically and does not require the lessor's consent.

Wal-Mart exercised these rights, and we hold that Wal-Mart cannot "vacate" within the meaning of this lease by doing what the lease expressly provides.

OPI next contends several courts have found an implied covenant of continuous use, even in the face of an express right to assign or sublet, where the minimum base rent is insubstantial in relation to the percentage rent. We need not address OPI's assertions that the minimum base rent here is insubstantial, however, because the cases OPI cites are easily distinguishable. All the leases in those cases contain sublease or assignment clauses requiring the landlords' consent, or use clauses which severely restrict sublessees' or assignees' right to use the premises. See Larew v. Hooks-SupeRx, 905 F. Supp. 401, 406 (E.D. Ky. 1995) ("sublease term is so narrowly tailored that it implies that some suitable replacement business would occupy the leased space"); Pequot Spring Water Co. v. Brunelle, 698 A.2d 920, 924 (Conn. App. Ct.) (lessor's "retained . . . right to refuse a sublease implies . . . a suitable replacement business would occupy [premises]"), cert. granted, 701 A.2d 658 (Conn. 1997); East Broadway Corp. v. Taco Bell Corp., 542 N.W.2d 816, 820 (Iowa 1996) (use clause restricting lessee to "sale of Mexican foods" and assignment clause requiring "written approval of the lessor" did not constitute "a general right to assign negating an implied covenant for continued operation"). The broad assignment and use clauses in the lease here cannot be harmonized or read consistently with an implied covenant of continuous use.[2]

We **AFFIRM** the district court.

ENTERED FOR THE COURT

---

[2] Finally, we do not reach whether the default clause is a condition subsequent or a covenant. Because we hold Wal-Mart did not vacate the premises within the meaning of the lease, we need not determine what the precise consequences of vacating are.

-4-

Stephanie K. Seymour
Chief Judge