## NATIONAL METROPOLITAN BANK OF WASHINGTON et al. v. JUDGE.
### No. 178.

Municipal Court of Appeals for the District of Columbia.

May 5, 1944.

Caesar L. Aiello, of Washington, D. C. (John R. Wall, of Washington, D. C., on the brief), for appellants.

Frederick M. Bradley, of Washington, D. C., for appellee.

Before CAYTON and HOOD, Associate Judges.[1]

HOOD, Associate Judge.

Appellants, trustees under the will of O. H. P. Johnson, are owners of premises 2205 Massachusetts Avenue, Northwest, which they leased as a dwelling to appellee for a two year term ended November 30, 1942. At the expiration of the term appellee continued in possession. In the year 1943, the trustees informed her they considered it best for the trust estate that the property be sold and made repeated efforts to obtain the tenant's consent to the showing of the property to prospective purchasers. The tenant consistently refused to admit prospective buyers to the property. Because of this refusal the trustees brought action to recover possession of the premises. The trial court denied them recovery.

Appellants, recognizing that the tenant is entitled to the protection of the District of Columbia Emergency Rent Act,[2] nevertheless contend the tenant has violated an obligation of her tenancy within the meaning of section 5 (b) (1) of the Act. Their position is that (1) the terms of the lease under which the tenant went into possession expressly required the tenant to permit inspection of the property by prospective purchasers, and (2) that there is

---

[1] Two judges of this court constitute a quorum. Act of April 1, 1942, Code 1940, § 11—771.

[2] Code 1940, § 45—1601 to 1611.

implicit in the tenancy of one holding over after expiration of his term and claiming protection of the Rent Act, the obligation to permit the landlord to show the premises to prospective purchasers.

██ The first ground of appellants' argument is based on the provision of the lease "That, during the last month of this tenancy or during any extension thereof she will permit the lessors or their agents or employees to enter upon said premises at reasonable hours, for the purposes of showing the same to prospective future tenant or tenants." Appellants argue that "prospective future tenant or tenants" is broad enough to include prospective purchasers; but we agree with appellee that, even if technically the word tenant may include all occupants whether by leasehold or freehold, yet when used in a landlord and tenant agreement its meaning, unless otherwise defined, is restricted to the usual understanding of the word, i.e., one who holds under the relationship of landlord and tenant.

The second ground requires more serious consideration. The trustees say the tenant's action prevents them from selling the property. The tenant says her refusal to permit inspection constitutes no violation of any provision of the written lease under which she obtained possession or of her tenancy under the Rent Act by which she continues in possession. The Rent Act imposes no such obligation in express terms, and the question presented is whether there is an implied obligation of that nature.

We think it is beyond dispute that the tenant's refusal to permit inspection seriously hampers sale of the property. The tenant says that property in the District of Columbia is being sold today without inspection, and probably this is true in some instances; but the usual sale is not made without inspection. No argument is necessary to show that the great majority of prospective purchasers of improved real estate will not buy unless they are afforded a thorough inspection of the premises. A pig in a poke is neither readily saleable nor likely to bring a fair market price.

██ The Rent Act did not intend to prevent the free sale of dwelling property. Section 5 (b) (3) expressly recognizes the landlord's right to sell. May the tenant destroy that right of sale or effectively prevent its exercise? In the present case the tenant's possession depends wholly on the Rent Act, because except for it she could be dispossessed at any time on thirty days' notice. Her rights come from the Act and she must accept any corresponding duties. The Act was passed primarily for the protection of tenants but it does not ignore the rights of landlords. It restricts the landlord's right to recover possession and provides for maximum rent ceilings and minimum service standards with which the landlord must comply, but it did not intend that the rights given the tenant be used to frustrate the rights reserved to the landlord. The landlord and the tenant must recognize and respect the other's rights. One of the landlord's rights is the right to sell and we think the tenant must recognize that right and permit the landlord to exercise his right freely. When the tenant refuses to permit inspection he interferes with the landlord's right to sell. Sale of the property will not necessarily disturb the tenant's possession, since the new owner cannot oust the tenant unless he brings himself within one of the exceptions permitted by the Act.

██ Our conclusion is that since the landlord has the right to sell and, because sale without inspection is impracticable and perhaps impossible, the right to sell includes the right to show the premises at reasonable times. The right of the landlord to show the premises must, of course, be exercised reasonably and in good faith and cannot be used to harass the tenant or unreasonably interfere with his enjoyment of possession. In this case the trustees asked only for consent to show the property at reasonable times. When the tenant refused to consent she violated an obligation of her tenancy.

The judgment below will be reversed and remanded for further proceedings not inconsistent with this opinion. The trial court may very properly withhold judgment for possession conditioned upon the tenant entering into a stipulation agreeing to permit inspection at reasonable times, to be agreed upon by the parties or fixed by the trial judge.

Reversed and remanded.