**EAST BROADWAY CORPORATION, An Iowa Corporation, Appellee,**

v.

**TACO BELL CORPORATION, a California Corporation, Appellant.**

**No. 94–875.**

Supreme Court of Iowa.

Jan. 17, 1996.

818

A.W. Tauke of Porter, Tauke & Ebke, Council Bluffs, for appellant.

Robert J. Laubenthal of the Smith Peterson Law Firm, Council Bluffs, for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

The landlord filed suit in district court requesting judgment for damages arising from the breach of a lease and its implied covenant for continued operation. The tenant had paid the base rent for the last year of the lease but paid no percentage rent because it was not operating its business at the lease site. The tenant denied there was an implied covenant for continued operation and filed a motion to adjudicate law points. After hearing on the motion the court determined that the issue as to whether the lease contained an implied covenant for continued operation encompassed a fact question to be decided by the jury.

The case was tried to a jury and a verdict was returned for the landlord. The court entered judgment on the verdict in the amount of $53,805.64 plus interest and costs. The tenant appealed. We transferred the appeal to the court of appeals. *See* Iowa Code § 602.4102(2) (1993).

Finding the rent was primarily based on the fixed rent, the court of appeals held there was no substantial evidence to support the finding of an implied covenant for continued operation and reversed the district court's judgment. We granted the landlord's application for further review. *See id.* § 602.4102(4).

I. *Background.*

On September 2, 1971 McBluffs, Inc. (McBluffs) entered into a twenty-year lease agreement with Taco Bell, a California corporation (tenant). McBluffs had previously secured a fifty-year lease of a tract of land adjacent to East Broadway Street in Council Bluffs, Iowa, and had constructed and operated a restaurant food vending establishment called Bronco's Restaurant on a portion of the leased land. Under the terms of the lease with the tenant, McBluffs agreed to construct a building, driveway, and paved parking area adjacent to the Bronco's Restaurant. The lease required the tenant to "deal exclusively in the sale of Mexican food" and permitted the tenant to select the contractor and to construct the building designed to the tenant's specifications.

The rent was based upon the value of the leased premises. The agreed value of the real estate was $55,000; the value of the buildings and improvements was established at $55,000 or the total cost of the construction and improvements if more than $55,000. The annual base rental was to be equal to thirteen percent of the total value of the premises. It was to be paid in twelve equal installments during each year. The agreement also required the tenant to pay property taxes, insurance, and utility costs. An addendum to the lease reflected the total cost of the construction exceeded $55,000 by $10,840. Using the revised value of the leased premise it was agreed the base rent was $1,309.10 per month.

The initial lease contained a cost of living increase adjustment based on the United States Department of Labor Consumer Price Index (CPI). The tenant rejected this provision. A first amendment to the lease deleted the cost of living provision and substituted a provision requiring additional rent of five

percent of the gross sales in excess of $17,-000 per month. The additional percentage rent was to be paid quarterly. The lease did not contain a written provision requiring the tenant to continuously operate the restaurant during the twenty-year period of the lease.

The lease term began in July 1972 when the tenant opened its Mexican restaurant. During the first nineteen years of the lease the tenant paid both the monthly base rent and the quarterly percentage rent based upon gross sales. During the fourteen-year period between 1977 and 1991, the annual percentage rent paid by the tenant increased from $13,070 to $40,979. It was during this period the tenant put in a drive-in window (1984) and added a mini-line in the building (1989).

On August 1, 1990 McBluffs transferred its interest in the lease to East Broadway Corporation (landlord). Taco Bell purchased property along East Broadway approximately 150 feet from the leased site and constructed a building. It ceased operation at the leased site and commenced operation at the new location in July of 1991. The tenant continued to pay the fixed base rent, taxes, and insurance for the remaining year of the lease. It surrendered possession of the premises to the landlord in July of 1992. The landlord then brought suit to recover damages based on the percentage rent arising from the breach of an implied covenant for continued operation.

On appeal the tenant challenges the court's refusal to grant its motion for a directed verdict, a judgment notwithstanding the verdict or new trial, the court's instructions to the jury, and the court's admission of CPI evidence.

■ Our scope of review is for errors at law. Iowa R.App. P. 4.

## II. *Implied Covenant of Continuous Operation.*

We have recognized an implied covenant to continue operation of a business arising from a lease agreement. *Fashion Fabrics of Iowa v. Retail Investors*, 266 N.W.2d 22, 28 (Iowa 1978). In *Fashion Fabrics* we held, as a matter of law, that the evidence showed there was an implied covenant by the lessor to continue operating its business during the period of the sublease. *Id.* at 27. We stated:

A contract includes not only what is expressly stated but also what is necessarily to be implied from the language used; and terms which may clearly be implied from a consideration of the entire contract are as much a part thereof as though plainly written on its face.

. . . .

Courts are slow to find implied covenants. The obligation must arise from the language used or it must be indispensable to give effect to the intent of the parties; it must have been so clearly within their contemplation that they deemed it unnecessary to express it. It can be justified only on the ground of legal necessity and can arise only when it can be assumed it would have been made part of the agreement if attention had been called to it. Moreover, an implied covenant cannot be found when the contract is fully integrated.

Nevertheless, courts confronted with commercial lease disputes have recognized the existence of implied covenants to continue operating a business on leased premises in two general situations. One involves the lessee and the other the lessor. In each situation the implication arises from circumstances which include a relationship of significant economic interdependence.

When rent is fixed exclusively or primarily on the basis of a percentage of the lessee's gross revenues or profit, an obligation on the part of the lessee to continue operating in good faith has been implied.

*Id.* at 27–28 (citations omitted).

■ Generally, a covenant of continuous use and operation will be implied in cases involving commercial leases when the tenant is obligated to pay a significant part of the rental as a percentage of the tenant's gross receipts. *See* 49 Am.Jur.2d *Landlord and Tenant* § 69, at 99 (1995). However, other factors may be considered. *Id.* at 100–101.

Here, the court instructed the jury that:

In order for the plaintiff to recover on this cause of action, the plaintiff must prove all the following propositions:

(1) That the rent in the lease is primarily based on a percentage basis.

(2) That Taco Bell discontinued business at the lease premise and failed to pay percentage rent.

(3) The amount of damages plaintiff has sustained.

Rent is primarily based on a percentage basis when the base rent is shown to be insubstantial in comparison to the percentage rent. You must decide this by determining what the parties intended when they entered into the lease.

The term "insubstantial" cannot be precisely defined; it is a relative term and not an exact term.

If you determine that the base rent, in comparison to the percentage rent, was insubstantial, then the defendant did have an obligation to continue operating the restaurant, and your verdict shall be for the plaintiff.

■ Our review of the court's rulings on a motion for a directed verdict and judgment notwithstanding the verdict is well settled:

[W]here no substantial evidence exists to support each element of a plaintiff's claim, directed verdict or judgment n.o.v. is proper. Substantial evidence is that which a "reasonable mind would accept as adequate to reach a conclusion." Where reasonable minds could differ on an issue, directed verdict is improper and the case should go to the jury. The trial court must consider the evidence in a light most favorable to the nonmoving party. On appeal, we consider the evidence in a way most favorable to upholding the verdict.

*Stover v. Lakeland Square Owners Ass'n,* 434 N.W.2d 866, 873 (Iowa 1989) (citations omitted).

■ We test the court's denial of a motion for new trial under an abuse of discretion standard. *Id.*

■ The tenant urges there is no substantial evidence that the lease is primarily based on a percentage basis. Under the instructions of the court the jury was asked to determine "what the parties intended when they entered into the lease." The intent of the parties may be determined from the terms of the lease, what is necessarily implied from the terms, and the circumstances surrounding the formation and execution of the lease. *See Fashion Fabrics,* 266 N.W.2d at 27–28.

Under the terms of the lease the landlord was required to construct a building of unique design for operation of the tenant's business. The lease contained specific provisions regarding the use of the building. Under its express terms it was

understood and agreed by lessee that in connection with its operation of a restaurant, or food vending establishment, it will deal exclusively in the sale of Mexican foods and is expressly restricted from the sale of the following items.... Lessor agrees not to engage in the sale of Mexican food at its adjacent food vending establishments.

This language is equivocal and does not preclude an implied covenant for continued operation. The lease also provides "subject to the written approval of the lessor, which shall not be arbitrarily withheld, lessee shall have the right to assign or sublet its interest in said premises." This is not a general right to assign negating an implied covenant for continued operation.

Among the circumstances surrounding the formation and execution of the lease was the substitution of a percentage of gross sales rental payment in lieu of a cost of living provision. The landlord included a cost of living provision in the initial lease as a hedge against inflation. Had the cost of living adjustment been applied, the rent would have increased annually and for the last year of the lease would have tripled the base amount. The jury could find the parties intended the percentage rental to be a substitute for the cost of living provision and that the percentage rental would be substantial when compared with the base rent. Obviously the tenant was aware of the landlord's desire for both a return on its investment and a hedge against inflation. "It is commonly known that such percentage

rental provisions are intended as a protection against the ravages of inflation where a long term lease is involved." *Bastian v. Albertson's, Inc.*, 102 Idaho 909, 914, 643 P.2d 1079, 1084 (1982). The lease did not contain an integration clause.

■ It was for the jury to determine what the parties intended and what the parties considered to be relatively the more important or substantial part of the rental payment. *See generally Walgreen Arizona Drug Co. v. Plaza Ctr. Corp.*, 132 Ariz. 512, 516, 647 P.2d 643, 647 (1982). We conclude there is substantial evidence upon which a jury could reasonably find the rent in the lease was primarily based on a percentage basis and that there exists an implied covenant of continued operation.

### III. *Jury Instructions.*

■ The tenant challenges both the marshaling instruction and an instruction on what is not considered as rent. The tenant objected because it believed the jury should be instructed it "should look at the time the contract was contemplated and look to whether the base rent would give a fair return on the investment of the lessor." The tenant requested that the court instruct the jury "fair rental value is a fair return on the landlord's investment of the property."

The court specifically instructed the jury to decide the issue by determining what the parties intended when they entered into the lease. Although some states have adopted the fair rental test requested by the tenant, the majority of states continue to focus on the relative importance of the percentage rental agreement when considering if there is an implied covenant for continued operation. 49 Am.Jur.2d *Landlord and Tenants* § 69, at 100 (1995).

■ The court also instructed the jury "that the cost of taxes, maintenance and insurance are not rent and should not be considered by you as such." The tenant urges this is an incorrect statement of the law. The general rule is that

the tenant's covenant to pay taxes is not the same as a covenant to pay rent, and such taxes are not ... regarded as a part

of the rent in the absence of a clear intention of the parties to that effect expressed in the lease.

*Id.* § 452, at 382. This general rule was applied in *Lamoine Mott Estate v. Neiman*, 77 F.2d 744, 747 (8th Cir.1935). *See also Miles Corp. v. Lindel*, 107 F.2d 729, 731 (8th Cir.1939). On review of the terms of the lease it is apparent the parties specifically identified what is rent and the provisions for the payment of taxes, maintenance, and insurance are not included in the definition. Under such circumstances, the court's instruction was not error. We have considered the court's denial of other requested instructions and find no reversible error.

### IV. *Consumer Price Index.*

■ The tenant objected to testimony and evidence of the CPI. The objection was "based on the fact that it was not included in the lease; it was not a part of this agreement." It was "irrelevant and immaterial."

The landlord argues it proposed the CPI adjustment as a hedge against inflation. Although the tenant rejected this provision, it proposed the percentage rent agreement as an alternative. The CPI evidence had limited relevancy on the issue of the landlord's intent and its intent to insist on a hedge against inflation.

Even if it were error to admit the CPI evidence, the admission did not affect a substantial right of the tenant. *See* Iowa R.Evid. 103(a); *Shawhan v. Polk County*, 420 N.W.2d 808, 810–11 (Iowa 1988). The jury's award of damages was not based upon the CPI but was clearly an allowance based upon the tenant's gross income for the twelve months prior to the breach of the lease plus interest.

### V. *Disposition.*

We vacate the court of appeals decision and affirm the district court's judgment.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**