# IN THE SUPREME COURT OF IOWA

No. 13–0496

Filed October 31, 2014

**ALTA VISTA PROPERTIES, LLC,**

　　Appellant,

vs.

**MAUER VISION CENTER, PC,**

　　Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, David F. Staudt, Judge.

A commercial landlord appeals a summary judgment ruling interpreting the parties' lease as prohibiting the landlord from showing the property to prospective purchasers until ninety days before the end of the lease term. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**

Corey R. Lorenzen and Kate B. Mitchell, Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C., Waterloo, for appellant.

Diane Kutzko, Donald L. Johnson, and Scott M. Wadding, Shuttleworth & Ingersoll, PLC, Cedar Rapids, for appellee.

**MANSFIELD, Justice.**

This case requires us to interpret a commercial lease. Our task is to determine whether the landlord is authorized to enter the leased property to show it to potential buyers. The tenant argues that access is not permitted until ninety days before the end of the lease term. The tenant relies on a lease provision entitled "SIGNS," which provides that the landlord may erect "For Rent" or "For Sale" signs during the last ninety days of the tenancy and that the tenant must permit prospective tenants or buyers to enter during that time. The tenant maintains this is the *only* time the landlord can access the property to show it to potential buyers.

The landlord disagrees. The landlord relies on lease provisions that make the tenant's use of the premises "non-exclusive" and give the landlord the right to sell the property, mortgage it, or assign the lease interest at any time during the lease term. The landlord contends that the right to *sell* the property encompasses the right to *show* the property during the lease term at reasonable times to prospective buyers.

Upon our review, we agree with the landlord's interpretation of the lease. Therefore, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand with instructions to the district court to enter summary judgment in favor of the landlord.

### I. Background Facts and Proceedings.

On October 23, 2003, Mauer Vision Center, PC as tenant and I4NI, L.L.C. as landlord entered into a written lease for a building located at 124 Second Street N.E. in Waverly, together with the use of the improvements thereon. The lease had a term of fifteen and one-half years. The lease included the following provisions:

12.  SIGNS.

A. Tenant shall have the right and privilege of attaching, affixing, painting or exhibiting signs on the Leased Premises, provided only:

> (1)   Any and all signs shall comply with the ordinances of the [City of Waverly] and the laws of the State of Iowa;
>
> (2)   Such signs shall not change the structure of the building; and
>
> (3)   Such signs, if and when taken down, shall not damage the building.

B.  Landlord, during the last ninety (90) days of this Lease, or any extension, shall have the right to maintain in the windows or on the building or on the premises a "For Rent" or "For Sale" sign, and Tenant will permit, at such time, prospective tenants or buyers to enter and examine the premises.

13.  ASSIGNMENT AND SUBLETTING.  Landlord may assign all or any part of its rights under this Lease to any grantee or mortgagee. . . .

. . . .

18. COVENANT FOR QUIET ENJOYMENT.  Landlord covenants that Landlord's estate in said Premises is in fee simple; and that the Tenant on paying the rent herein reserved and performing all the agreements by the Tenant to be performed as provided in this Lease, shall and may peaceably have, hold and enjoy, the non-exclusive use of the Leased Premises for the term of this Lease.

19.  RIGHT TO MORTGAGE.  Landlord shall have the right to mortgage all of its right, title, and interest in said Premises at any time without notice, subject to this Lease.

. . . .

24.  CHANGES TO BE IN WRITING. . . .  This Lease contains the whole agreement of the parties.

. . . .

27. RIGHT OF FIRST REFUSAL.  In the event Landlord receives an offer to purchase the building that includes the Leased Premises during the term of this Lease or any renewal term which Landlord is willing to accept, Landlord shall first give notice of such offer to Tenant.  Tenant shall

have the right to elect to purchase the building that includes the Leased Premises on the same terms and conditions contained in such offer by giving written notice of its intention to exercise its right within five (5) days after receipt of written notice of such offer from Landlord. Tenant's failure to give notice of its intention to exercise its right of first refusal within the five (5) day period shall cause this right of first refusal to lapse and Landlord shall then have the right to proceed to sell the building to the party which submitted the offer to purchase the same.

The lease also provided in paragraphs 5 and 7 respectively that the landlord had a right to regain possession on termination of the lease and, during the lease term, the tenant and not the landlord was responsible for maintenance and repair of the building. Additionally, paragraph 16 authorized the landlord to take possession of the premises in the event of certain defaults.

Dr. Richard Mauer was the president of Mauer and a member of I4NI at the time the lease was executed in 2003. He signed the lease for both entities.[1]

On June 15, 2006, I4NI transferred its interest in the lease to Alta Vista Properties, LLC. The parties agree that Alta Vista became Mauer's landlord following the sale and assumed all the rights and responsibilities of the landlord under the lease. It is also undisputed that prior to the 2006 sale, I4NI had access to the premises to show it to prospective buyers, including Alta Vista.

In May 2012, Alta Vista became interested itself in selling the underlying real estate. Its representatives contacted representatives of Mauer, who refused to allow Alta Vista access to the building to show it to potential purchasers. On June 27, Alta Vista filed a petition for a declaratory judgment, seeking a ruling that it could have reasonable

---

[1]Another individual also signed on behalf of I4NI as vice president.

access to the property to show it to prospective buyers.  Mauer answered, disputing Alta Vista's interpretation of the lease.

The parties both moved for summary judgment.  Mauer relied on paragraph 12 of the lease.  It said that this provision unambiguously limited the landlord's access to the premises for purposes of showing it to potential buyers to the last ninety days of the lease term.  Alta Vista, by contrast, argued that the lease taken as a whole—especially paragraphs 13, 18, 19, and 27—gave it a reasonable right of access to show the premises to prospective buyers throughout the lease term.

The district court found the contract to be unambiguous and granted summary judgment to Mauer.  The court reasoned,

> In interpreting paragraph No. 12, the court finds no ambiguity to exist. . . .  Paragraph 12(b) provides that the "tenant will permit prospective tenants or buyers to enter and examine the premises."  The time period allowed to permit entry relates back to the term "last 90 days of this lease."  Paragraph 12 provides a specific and determinative time, place, and setting that allows prospective buyers to view the property.

> The court further views paragraph 18 as not ambiguous in nature.  The portion of paragraph 18 cited by the plaintiff, "The nonexclusive use of the leased premises for the term of this lease" is not ambiguous.  The term "nonexclusive use" may well be describing the effect of paragraph 12.  The right of the landlord to show the property within the final 90 days of the lease term easily fits within a logical definition of "nonexclusive use."

The court added,

> The court does find the terms of the lease allowing the tenant the opportunity to prevent a landlord from allowing a [prospective] purchaser the opportunity to inspect the property to be rather onerous.  However, the mere fact that a term to a commercial business lease is onerous does not make it ambiguous or unenforceable.  It appears to the court that a standard lease term such as paragraph 12 entitled "signs" was inserted into this business lease that included an extremely lengthy lease term.  In any event, sophisticated business entities such as Alta Vista may contract away any

right or responsibility. . . . The court concludes that Mauer may exclude Alta Vista Properties . . . from showing the property until 90 days remain in the term of the lease.

Alta Vista appealed the ruling. We transferred the case to the court of appeals.

The court of appeals affirmed the district court's grant of summary judgment in Mauer's favor. It agreed with the district court that the lease unambiguously limits the landlord's access to the property to show it to potential buyers to the last ninety days of the lease term.

We granted Alta Vista's application for further review.

**II.  Standard of Review.**

We review grants of summary judgment for correction of errors at law. *Peak v. Adams*, 799 N.W.2d 535, 542 (Iowa 2011). "Interpretation of a contract is a legal issue unless the interpretation of the contract depends on extrinsic evidence." *Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 435 (Iowa 2008); *see also Hartig Drug Co. v. Hartig*, 602 N.W.2d 794, 797 (Iowa 1999) ("[W]hen no relevant extrinsic evidence exists, the resolution of any ambiguity in a written contract is a matter of law for the court.").

**III.  Analysis.**

This case requires us to determine whether the lease permits the lessor to enter the property at reasonable times to show it to prospective purchasers during the lease term. Mauer argues that because paragraph 12 provides that "Tenant will permit, [during the last 90 days of the lease term], prospective tenants or buyers to enter and examine the premises," it thereby denies access at other times. Alta Vista counters that paragraph 18 provides Mauer with only "non-exclusive use" of the premises, and paragraphs 13, 19, and 27 expressly give Alta Vista the rights to sell the property, mortgage the property, or assign the lease

interest at any time—thus carrying along the right to show the property to such potential buyers or financiers.[2]

Because a lease is a contract, we apply ordinary contract principles to determine its meaning and legal effect. *See Walsh v. Nelson*, 622 N.W.2d 499, 503 (Iowa 2001). We thus consider the lease as a whole as well as any pertinent extrinsic evidence. *See Fausel v. JRJ Enters., Inc.*, 603 N.W.2d 612, 618 (Iowa 1999); *Fashion Fabrics of Iowa, Inc. v. Retail Investors Corp.*, 266 N.W.2d 22, 26 (Iowa 1978).

> "[A]ny determination of meaning or ambiguity should only be made in the light of relevant evidence of the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties. *But after the transaction has been shown in all its length and breadth, the words of an integrated agreement remain the most important evidence of intention.*"

*Pillsbury*, 752 N.W.2d at 436 (quoting *Fausel*, 603 N.W.2d at 618) (internal quotation marks omitted).

In this case, there is relatively little extrinsic evidence. We agree with Mauer that a conclusory sworn statement from a principal of I4NI as to what was "understood" or "wanted" at the time the lease was signed brings little to the table. *See Peak*, 799 N.W.2d at 544 (declining to give weight to one party's undisclosed unilateral intent); *cf. Kroblin v. RDR*

---

[2]Mauer argues that Alta Vista did not preserve error on its contention that the lease terms by implication give Alta Vista a right of access to show the property at reasonable times to prospective purchasers. We disagree. In its petition, Alta Vista alleged that the "[l]ease infers a reasonable right of access to Alta Vista and/or Alta Vista's agents to show Property to prospective buyer(s), in light of the explicit right given for Alta Vista to sell Property and assign Lease to such grantee." Additionally, in its cross-motion for summary judgment, Alta Vista again urged,

> The explicit terms of the Lease, as well [as] what is necessarily implied from the terms of the Lease, show that I4NI and Mauer intended at the time the Lease was executed that the landlord be permitted access to the premises to show prospective buyers and mortgagees.

*Motels, Inc.*, 347 N.W.2d 430, 432–33 (Iowa 1984) (authorizing consideration of written and oral *communications* between the parties as an aid to contract interpretation). However, the fact that Mauer permitted I4NI to show the property to potential buyers before the 2006 sale to Alta Vista is some evidence of a relevant course of dealing. *See* Restatement (Second) of Contracts § 202(5), at 86–87 (1981) (referring to the parties' course of dealing as one interpretive tool). In any event, our primary focus will be on the language of the lease.

Several principles of interpretation are pertinent here. "[A]n interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." *Fashion Fabrics*, 266 N.W.2d at 26 (citing Restatement (Second) of Contracts § 229 (Tentative Draft No. 1–7)). Additionally, a lease includes not only what is expressly stated by its terms but also what is necessarily implied to give effect to its express terms. *See id.* at 27 ("Contractual obligations may arise from implication as well as from the express writing of the parties."). Courts imply contractual terms where the obligation "arise[s] from the language used or [is] indispensable to give effect to the intent of the parties." *Id.*

Applying these principles here, we respectfully disagree with the district court's and the court of appeals' interpretation of the lease. In our view, paragraph 12 does not unambiguously bar the landlord's access to the premises to show the property to potential buyers prior to the last ninety days of the lease term. True, it says the tenant must allow prospective tenants and buyers to enter and examine the premises during the last ninety days. Yet it does not say this is the *only* time they are permitted on the premises. Of course, we have the rule of contract interpretation that "*expressio unius est exclusio alterius*—'[T]he

expression of one thing of a class implies the exclusion of others not expressed.' " *Peak*, 799 N.W.2d at 548 (quoting *Maytag Co. v. Alward*, 253 Iowa 455, 460, 112 N.W.2d 654, 656 (1962)). But this is only one principle of interpretation, not necessarily a legal trump card.

Paragraph 12, as its heading indicates, deals primarily with the subject of "signs." Several clauses in subparagraph A of that paragraph address the tenant's right to put signs on the premises. Subparagraph B then confers on the landlord the right to put "For Rent" or "For Sale" signs on the premises during the last ninety days of the lease term, while requiring the tenant to permit prospective buyers or tenants to enter and examine the premises during that time. In context, one could conclude that subparagraph B is intended to address the landlord's need to find a new *occupant* for the premises, either a lessee or a buyer, as the lease nears expiration. At the same time, one could conclude that the subparagraph is not intended to restrict the landlord's ability to sell, finance, or refinance the property *subject to* the lease.

Moreover, paragraph 12 does not refer to the *landlord*'s ability to enter the building (conceivably with a prospective buyer in tow), but only to *prospective tenants and buyers* (potentially unaccompanied by the landlord) being able to enter and examine the premises. Once signs are displayed as permitted by paragraph 12, prospective tenants and buyers might see them and want to approach the tenant to look at the property, even when the landlord or its representative is unavailable. Seemingly, paragraph 12 requires the tenant to admit them and thereby serves a significant purpose even if the landlord retains the right to show the property outside the ninety-day window.

The view that paragraph 12 is a relatively narrow provision dealing with marketing the property to new occupants during the final ninety

days, as opposed to a broad ban on landlord access to show the underlying real estate to prospective buyers during the rest of the lease term, finds support in other lease provisions. Paragraph 18 states that Mauer's use of the premises during the lease term is "non-exclusive." While there are various ways of reconciling this provision with the rest of the lease, paragraph 18 undermines any presumption that Alta Vista can only enter the property when a paragraph of the lease expressly permits it to do so. Such a restriction on Alta Vista's access would result in *exclusive* use for Mauer rather than the non-exclusive use described in paragraph 18.[3]

Moreover, as Alta Vista points out, paragraphs 19 and 27 give it the express right to sell and mortgage the underlying property (subject to the lease) during the lease term. Who would buy or finance something he or she could not look at? *See Fashion Fabrics*, 266 N.W.2d at 26 (disfavoring lease interpretations that render a provision of "no effect").

In addition, Mauer's interpretation seemingly leads to an unfair outcome. *See id.* at 26 (disfavoring interpretations that leave a part of the lease "unreasonable"). The inconvenience to Mauer if Alta Vista is allowed to show the property at a reasonable time to a prospective buyer is minimal. Yet the potential loss to Alta Vista if it cannot show the property is substantial: Alta Vista would likely be unable to sell the property to or finance the property with any bona fide third party. *See Midwest Mgmt. Corp. v. Stephens*, 291 N.W.2d 896, 913 (Iowa 1980) ("An

---

[3]Notably, the district court's interpretation of the "non-exclusive use" provision would make it redundant of paragraph 12, thereby violating the rule against interpreting contract provisions to have no independent effect. *See Fashion Fabrics*, 266 N.W.2d at 26.

agreement will not be given an interpretation which places one party at the mercy of another unless the contract clearly requires that result.").

In effect, Mauer's interpretation of the lease operates as a restraint on alienation. *See* Restatement (Second) of Prop.: Landlord & Tenant § 15.1 & cmt. *a,* at 85–86 (1977) (noting "the undesirability of restraints on alienation" and indicating that a landlord's interest in the leased property is "freely transferable, unless[] (1) a tenancy at will is involved; (2) the lease requires significant personal services from either party and a transfer . . . would substantially impair the other party's chances of obtaining those services; or (3) the parties . . . agree otherwise").[4]

In sum, as we read the lease, the parties expressly contracted to limit the more intrusive aspects of advertising and resale to the last ninety days of the term, but the lease also allows Alta Vista to exhibit the building to prospective buyers of the underlying real estate at reasonable times outside that period. A sign advertising the property for sale could adversely affect Mauer's business. Thus, paragraph 12 confines such signs to the final ninety days. But temporary, reasonable access to show the property to a potential buyer would not affect Mauer's business and is a logical corollary to paragraphs 13, 19, and 27 of the lease.

It is true that the lease has a brief integration clause in paragraph 24. That clause states, "This Lease contains the whole agreement of the parties." Such clauses are "one factor we take into account in

---

[4]Mauer further argues that paragraphs 5 and 16, authorizing Alta Vista to gain "possession" of the premises on the happening of certain events, impliedly foreclose Alta Vista from having access to the premises on other occasions. However, these provisions grant Alta Vista exclusive possession. We are talking here about something different— temporary *access.* Mauer also invokes paragraph 7 concerning the duty of maintenance and repair, but again the issue here is a distinct one not related to maintenance or repair of the premises.

determining whether an agreement is fully integrated." *C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 85 (Iowa 2011). However, even if we assume the lease here is fully integrated, the present dispute is one of lease *interpretation. See* 5 Margaret N. Kniffin, *Corbin on Contracts* § 24.12, at 108 (Joseph M. Perillo, ed., rev. ed. 1998) ("[I]f the court seeks merely to interpret a contract term, which is to discern the meaning of a term already contained in the contract, the question of whether the parties intended their agreement to be integrated is not relevant."). The issue, in other words, is how we should reconcile and give proper effect to arguably conflicting terms that (1) provide the tenant with "non-exclusive use" of the premises for the entire lease term, (2) require the tenant to allow access to prospective tenants and buyers during the last ninety days, and (3) authorize the landlord to sell or mortgage the premises or assign its lease interest at any time during the lease term.

Reading an existing contractual provision as having an essential corollary is different from adding a new implied term to a contract. The former is an interpretive exercise and is permissible even if the agreement is integrated. "An integrated contract can contain an implicit, unstated, but necessary term . . . ." *Acoustic Processing Tech., Inc. v. KDH Elec. Sys. Inc.*, 697 F. Supp. 2d 146, 161 (D. Me. 2010). "The salutary purpose of [an integration clause] is to preclude consideration of matters extrinsic to the agreement. It is of no relevance if the promise, albeit imperfectly expressed, is implicit in the contract as written." *Havel v. Kelsey–Hayes Co.*, 445 N.Y.S.2d 333, 336 (App. Div. 1981); *see also U.S. Gypsum Co. v. Schiavo Bros., Inc.*, 668 F.2d 172, 175 (3d Cir. 1981) (concluding that the presence of an integration clause did not negate any implied covenants contained in the lease agreement); *Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 407 (E.D.N.Y. 2012) ("While

independent obligations beyond those stated in the contract will not be inferred, a plaintiff adequately states an implied covenant claim by alleging conduct that subverts the contract's purpose without violating its express terms." (Internal quotation marks omitted.)); *Seashore Performing Arts Ctr., Inc. v. Town of Old Orchard Beach*, 676 A.2d 482, 484 (Me. 1996) ("Even an integrated contract, such as the purchase and sale agreement [here], may include an unwritten implied term.").[5]

This principle is related to the implied duty of good faith and fair dealing, which inheres in all contracts and cannot be disclaimed through an integration clause or otherwise. *See Fogel v. Trs. of Iowa Coll.*, 446 N.W.2d 451, 456 (Iowa 1989) (noting that the duty is "recognized in all contracts"); Restatement (Second) of Contracts § 205, at 99 (1981) ("Every contract imposes upon each party a duty of good faith and fair

---

[5]We said in *Fashion Fabrics* that "an implied covenant cannot be found when the contract is fully integrated." 266 N.W.2d at 28. We later quoted this statement in *East Broadway Corp. v. Taco Bell Corp.*, 542 N.W.2d 816, 819 (Iowa 1996). We believe that as a categorical statement, this language may be too broad and inconsistent with the overall approach taken by the Second Restatement of Contracts. When a contract is integrated, terms may not be added to the contract, whether express or through a process of implication. *See* Restatement (Second) of Contracts § 212, at 125 (1981). However, even when a contract is integrated, its express terms may carry necessary implications, e.g., things that must be implied so a party does not lose the negotiated benefit of the express term. And even when a contract is integrated, a court may have to sort through and reconcile express terms that are seemingly inconsistent in order to determine the parties' ultimate rights. Those are matters of interpretation that form the present dispute.

In *Fashion Fabrics*, the sublessee's case for an implied covenant was weaker. The lease called for the sublessor to receive the greater of a flat rent or a percentage of the sublessee's gross sales. 266 N.W.2d at 24. The sublessee sought to imply a covenant by the sublessor to continue operating its adjacent business. *Id.* at 26. In that situation, one could not say that the sublessor's staying in business was necessary to give meaning to a provision in the sublease. The sublessee could operate its own business and make sales regardless. Hence, although we ultimately implied the covenant requested by the sublessee, we reasoned it made a difference whether the contract was integrated or not. *Id.* at 28–29. Here, the implied right to show the property is necessary to give effect to an express term authorizing sale. Additionally, in *Fashion Fabrics* there were no seemingly inconsistent provisions to reconcile.

dealing in its performance and its enforcement."); *see also Nw., Inc. v. Ginsberg*, 572 U.S. __, __ & n.2 134 S. Ct. 1422, 1432 & n.2, 188 L. Ed. 2d 538, 550 & n.2 (2014) (identifying ten jurisdictions that preclude a party from waiving the obligations of good faith and fair dealing). " 'The underlying principle is that there is an implied covenant that neither party will do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.' " *Am. Tower, L.P. v. Local TV Iowa, L.L.C.*, 809 N.W.2d 546, 550 (Iowa Ct. App. 2011) (quoting 13 Richard A. Lord, *Williston on Contracts* § 38.15, at 437 (4th ed. 2000)).

The Second Restatement of Contracts provides a helpful illustration: If A, the owner of a shopping center, were to lease part of the premises to B with the exclusive right to conduct a supermarket, it would be a breach of the implied duty of good faith and fair dealing for A to acquire the adjoining land and lease it to C to run a competing supermarket. Restatement (Second) of Contracts § 205, illus. 2, at 101. Although leasing the adjoining land to C would not literally violate the express terms of A's lease with B, it would nevertheless constitute a breach of contract by implication for violating the obligation of good faith and fair dealing. *See id.* The point is: The *express* right to operate the only supermarket on the premises carries with it the *implied* right not to have the landlord go into competition next door.

The implied covenant of good faith and fair dealing, however, "does not give rise to new substantive terms that do not otherwise exist in the contract." *Bagelmann v. First Nat'l Bank*, 823 N.W.2d 18, 34 (Iowa 2012) (internal quotation marks omitted). For example, in *Bagelmann*, we declined to find a breach of the implied good-faith-and-fair-dealing obligation when the mortgagee did not promptly provide the mortgagors

with updated and more accurate flood zone information determinations. *Id.* at 22. The mortgage contained no promise the mortgagee would provide notification or otherwise guarantee the property's flood hazard status and so we determined "any allegation of bad faith here lacks a contract term to which it can be attached." *Id.* at 34.

The present case is analogous to the circumstances described above in the Second Restatement of Contracts, and is distinguishable from *Bagelmann.* As in the Restatement example, the implied right in the present case follows logically from certain express terms of the agreement—i.e., the landlord's right to sell or mortgage the property. And unlike in *Bagelmann,* the contract here contains an express term (the right to sell) to which the implied obligation (the right to show the property) can be attached. It would "destroy[] or injur[e] the right of [Alta Vista] to receive the fruits of the contract" if we were to decline to find an implied right to show the premises to prospective buyers. *See Am. Tower,* 809 N.W.2d at 550.

Other courts have agreed that the right to sell property implicitly includes the right to show it to prospective purchasers. *See, e.g., Magliocco v. Olson,* 762 P.2d 681, 685 (Colo. App. 1987) (holding the landlord did not trespass when his agent entered the premises for the purpose of showing them to a potential tenant); *Glenn v. Keyes,* 154 P.2d 642, 644 (Utah 1944) (stating a landlord has the right to show the premises to prospective buyers unless the landlord and tenant specifically agree to limit that right). In a case from the District of Columbia, a law gave the landlord the express right to sell the property. *Nat'l Metro. Bank of Wash. v. Judge,* 37 A.2d 446, 446–47 (D.C. 1944). The act did not explicitly grant a right to show the premises to

prospective buyers, but the court nevertheless held the landlord should be able to do so:

> We think it is beyond dispute that the tenant's refusal to permit inspection seriously hampers sale of the property. . . . No argument is necessary to show that the great majority of prospective purchasers of improved real estate will not buy unless they are afforded a thorough inspection of the premises. . . .
>
> . . . .
>
> Our conclusion is that since the landlord has the right to sell and, because sale without inspection is impracticable and perhaps impossible, the right to sell includes the right to show the premises at reasonable times.

*Id.* at 447.

More recently, a California court framed a similar issue in terms of the balancing of tenants' and landlords' conflicting interests in rented property. *See Dromy v. Lukovsky*, 161 Cal. Rptr. 3d 665, 669 (Ct. App. 2013). It first recognized the importance of the tenant's right to quiet enjoyment, but went on to explain that a landlord attempting to sell its property also enjoyed a right worthy of protection:

> [L]andlords have a strong interest in being able to sell their property if they choose to do so. The law generally favors free alienability of property. A landlord's ability to sell his or her property may be negatively impacted if the landlord cannot exhibit the property to prospective buyers at reasonable times.

*Id.* at 669–70 (citations omitted).

The Uniform Residential Landlord and Tenant Act (URLTA), adopted in Iowa, also acknowledges the importance of the landlord's ability to show property that he or she has the right to sell or finance. *See Iowa Code* § 562A.19(1) (2011). It provides, "The tenant shall not unreasonably withhold consent to the landlord to enter into the dwelling unit in order to . . . exhibit the dwelling unit to prospective or actual

purchasers, mortgagees, [or] tenants . . . ." *Id.* Although the URLTA only governs residential leases, its underlying logic is no less applicable in a commercial context: Where a landlord has the right to sell the premises, he or she needs to be able to enter the property to show it to prospective purchasers. Without a clearer directive in the lease to the contrary, we should not read a commercial lease as denying this access to a landlord who already possesses the underlying right to sell or mortgage the property.

In addition, courts have recognized a landlord's right to show property to prospective tenants as well as prospective buyers. *See, e.g., Eight W. Thirtieth St. Corp. v. Zelart Drug Co.*, 107 N.Y.S.2d 324, 324 (Sup. Ct. 1951) (permitting a landlord to exhibit commercial property where a statute gave the landlord the right to seek a prospective tenant).

The Illinois Appellate Court held that a landlord had the reasonable right to show the premises to prospective tenants upon receiving notice that the current tenant was terminating his tenancy. *Gronek v. Neuman*, 201 N.E.2d 617, 618 (Ill. App. Ct. 1964). Because the lease apparently did not grant the landlord the right to re-let or sell the property at any time as does the lease here, the *Gronek* court limited the landlord's right to show the property to the period after the tenant gave notice of his intent to vacate. *See id.* The court concluded the right to exhibit the property to potential tenants during this time was implicit in the right to re-let the premises. *See id.* As the court put it,

> We feel that the month's notice the law requires would be a meaningless protection, in terms of the lessor, if it did not carry with it the right to reasonably exhibit the premises durin[g] that period. Were this not the case, the landlord would suffer a month's loss in rental since no one would rent the property without the right to first examine the premises.

*Id.* The same principle applies in the present case.

For the foregoing reasons, we hold the lease gives Alta Vista the right to access the premises temporarily at reasonable times to show the property to prospective buyers.[6] Because we have reached this conclusion without considering extrinsic evidence and the only available extrinsic evidence further supports Alta Vista's interpretation, we can interpret the lease as a matter of law even though it is ambiguous. *See Pillsbury Co.*, 752 N.W.2d at 435 (holding interpretation is a matter of law for the court when it does not depend on extrinsic evidence); Restatement (Second) of Contracts § 212, at 125 (indicating interpretation of an integrated agreement is a question of law unless it "depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence"). Accordingly, we reverse the district court's judgment and remand the case with instructions to grant summary judgment in favor of Alta Vista. The decision of the court of appeals is vacated.

---

[6]We emphasize that access must be on reasonable terms so as not to interfere with Mauer's rights of possession. The D.C. Municipal Court of Appeals recognized this principle when it stated, "The right of the landlord to show the premises must, of course, be exercised reasonably and in good faith and cannot be used to harass the tenant or unreasonably interfere with his enjoyment of possession." *Nat'l Metro. Bank of Wash.*, 37 A.2d at 447. The *Gronek* court stated that the landlord showing the property to prospective tenants did not breach the tenant's right to enjoy the property when it was done at the tenant's convenience. 201 N.E.2d at 618. Iowa's URLTA requires the landlord to give "at least twenty-four hours' notice . . . and enter only at reasonable times." Iowa Code § 562A.19(3).

We agree that Alta Vista's right to show the property to prospective purchasers should be exercised reasonably and with minimal interference with Mauer's rights of possession and enjoyment of the property. In particular, because Mauer is a health care provider, the parties should work together to ensure that any showing of the property complies with the privacy provisions of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Pub. L. No. 104-191, 110 Stat. 1936 (1996) (codified as amended in scattered sections of 42 U.S.C.).

**IV. Conclusion.**

For the foregoing reasons, we reverse the summary judgment entered in favor of defendant Mauer Vision Center, PC and remand for the district court to enter summary judgment in favor of plaintiff Alta Vista Properties, LLC.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**

All justices concur, except Appel, J., who takes no part.