# IN THE COURT OF APPEALS OF IOWA

No. 16-1897
Filed August 16, 2017

**ALTA VISTA PROPERTIES, L.C.,**
　　　Plaintiff-Appellant,

**vs.**

**MAUER VISION CENTER, P.C.,**
　　　Defendant-Appellee.
_____

　　　Appeal from the Iowa District Court for Black Hawk County, Bradley J. Harris, Judge.


　　　Alta Vista Properties appeals from an adverse judgment in its breach-of-contract action against Mauer Vision Center. **AFFIRMED.**



　　　Kevin D. Ahrenholz of Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C., Waterloo, for appellant.

　　　Mark L. Zaiger and Kristymarie Shipley of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellee.



　　　Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**DANILSON, Chief Judge.**

Alta Vista Properties, L.C. (Alta Vista) appeals from an adverse judgment in its breach-of-contract action against Mauer Vision Center, P.C. (Mauer Vision). Because there is substantial evidence supporting the fact findings of the district court and we find no error of law, we affirm.

In June 2006, Alta Vista, owned by Ben Stroh, purchased property located at 124 Second Street NE, in Waverly, Iowa, for $900,000. The seller of the property was I4NI, L.L.C., an entity owned by Dr. Richard Mauer. At the time of the sale in 2006, the property was subject to a fifteen-year lease with a remaining guaranteed rental income of $1.1 million from the tenant, Mauer Vision. The lease was assigned to Alta Vista at the time of purchase.[1] Mauer Vision retained the right of first refusal to purchase the building.

In February 2012, Alta Vista sought to sell the property through Sulentic-Fischels Commercial Group (Sulentic). The original asking price was a little over $1 million, but eventually the asking price was reduced to $960,000. In 2011, the property had an assessed value of $438,330.[2] However, the remaining guaranteed lease payments from Mauer Vision would have been about $650,000.

Sometime in May 2012, Sulentic and a representative from Alta Vista requested the property be made available for persons interested in touring the

---

[1] As found by the district court:
> This lease was a triple net lease to extend to year 2019 with two additional 5-year options to extend the lease held by tenant. Rental amount paid upon the lease was excessive for the Waverly area. [Alta Vista] determined the purchase and assignment to be a good investment due to the rental rate, the triple net feature of the lease and the personal guaranty of the lease by the owner of Mauer Vision Center, P.C.

[2] This is the 2011 assessed value per the Bremer County assessor's office.

property. Karen Stubbe, the administrator for Dr. Mauer's practice, communicated to Alta Vista the public areas of the business could be viewed but the property was not available for touring[3] and referred Alta Vista to Mauer Vision's legal counsel. Mauer Vision asserted that under the lease, access was not permitted until ninety days before the end of the lease term. Alta Vista asserted it had the right to sell the property and, therefore, to show the property to potential buyers.

On June 27, 2012, Alta Vista filed a declaratory-judgment action seeking an interpretation of the commercial lease.

On July 25, 2012, more than six years into the guaranteed thirteen-year income stream, Brent Dahlstrom and Alta Vista entered into a purchase agreement for the sale of the property for $950,000. The following day, Alta Vista's attorney provided Mauer Vision documentation of the offer in connection with the right of first refusal to purchase the property. Mauer Vision declined to purchase the property for $950,000. Dahlstrom took no further action to pursue the property, including failing to request access to the property or visit the portions of the building open to the public, and the transaction did not go forward.

Both Alta Vista and Mauer Vision filed motions for summary judgment in the declaratory-judgment action. On February 2013, the district court found the commercial lease unambiguous and granted summary judgment to Mauer Vision.

On May 21, 2013, Alta Vista agreed to sell the property at issue as part of a "package deal" to Kyle Hawthorne. Alta Vista allocated $600,000 of the total

---

[3] Mauer Vision is a medical office subject to federal confidentiality rules and regulations, and a failure to comply can result in substantial financial penalties.

purchase price to the Mauer Vision property. Alta Vista presented the offer to Mauer Vision, which exercised its right and purchased the property for $600,000.

On December 5, 2013, this court affirmed the district court's summary judgment ruling in the declaratory-judgment action. *Alta Vista Props., L.L.C. v. Mauer Vision Ctr., P.C.*, No. 13-0496, 2013 WL 6403078 (Iowa Ct. App. December 5, 2013).

Alta Vista sought and was granted further review from the supreme court. On October 31, 2014, the supreme court issued its opinion vacating this court's opinion and the district court's grant of summary judgment to Mauer Vision. *Alta Vista Props., L.L.C. v. Mauer Vision Ctr., P.C.*, 855 N.W.2d 722, 724 (Iowa 2014). The supreme court observed, "This case requires us to determine whether the lease permits the lessor to enter the property at reasonable times to show it to prospective purchasers during the lease term." *Id.* at 726. After reviewing the rules of contract interpretation and the various provisions of the lease, the court found:

> In sum, as we read the lease, the parties expressly contracted to limit the more intrusive aspects of advertising and resale to the last ninety days of the term, but the lease also allows Alta Vista to exhibit the building to prospective buyers of the underlying real estate at reasonable times outside that period. A sign advertising the property for sale could adversely affect Mauer's business. Thus, paragraph 12 confines such signs to the final ninety days. But temporary, reasonable access to show the property to a potential buyer would not affect Mauer's business and is a logical corollary to paragraphs 13, 19, and 27 of the lease.

*Id.* at 729. The court held,

> [T]he lease gives Alta Vista the right to access the premises temporarily at reasonable times to show the property to prospective buyers. Because we have reached this conclusion without considering extrinsic evidence and the only available extrinsic

evidence further supports Alta Vista's interpretation, we can interpret the lease as a matter of law even though it is ambiguous. Accordingly, we reverse the district court's judgment and remand the case with instructions to grant summary judgment in favor of Alta Vista.

*Id.* at 732–33 (footnote omitted) (citations omitted).

However, in a footnote, the court emphasized:

[T]hat access must be on reasonable terms so as not to interfere with Mauer's rights of possession. The D.C. Municipal Court of Appeals recognized this principle when it stated, "The right of the landlord to show the premises must, of course, be exercised reasonably and in good faith and cannot be used to harass the tenant or unreasonably interfere with his enjoyment of possession." *Nat'l Metro. Bank of Wash.* [*v. Judge*], 37 A.2d [446,] 447 [D.C. 1944)]. The *Gronek* court stated that the landlord showing the property to prospective tenants did not breach the tenant's right to enjoy the property when it was done at the tenant's convenience. [*Gronek v. Neuman*, 201 N.E.2d 617, 618 (1964).] Iowa's [Uniform Residential Landlord and Tenant Act] requires the landlord to give "at least twenty-four hours' notice . . . and enter only at reasonable times." Iowa Code § 562A.19(3).

We agree that Alta Vista's right to show the property to prospective purchasers should be exercised reasonably and with minimal interference with Mauer's rights of possession and enjoyment of the property. In particular, because Mauer is a health care provider, the parties should work together to ensure that any showing of the property complies with the privacy provisions of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Pub. L. No. 104–191, 110 Stat. 1936 (1996) (codified as amended in scattered sections of 42 U.S.C.).

*Id.* at 733 n.6.

On July 27, 2015, Alta Vista filed this breach-of-contract action against Mauer Vision, asserting it had been denied access to the property on July 25, 2012—the day it entered into the purchase agreement with Dahlstrom—and suffered damages as a result. The case proceeded to a two-day bench trial. On October 11, 2016, the district court entered judgment for Mauer Vision. The court made the following findings (among others):

On July 25, 2012, while the [declaratory] action was pending, James Sulentic prepared a purchase agreement from Brent Dahlstrom for the Waverly property. Purchase price of the property and lease was set at $950,000. Dahlstrom was advised that a problem had previously arisen regarding the opportunity to view the property; however, it was believed that the problem would be resolved because a written offer was now prepared. Dahlstrom left the preparation of the paperwork and the arrangements for the inspection of the property up to Sulentic. Dahlstrom was later advised that he would be unable to view the property and Dahlstrom therefore withdrew his offer. When asked if he attempted to gain access to the property for Dahlstrom to perform an inspection, Sulentic testified, "I don't recall. I'm sure that we tried one more time to get in, and we didn't get in." [Alta Vista] provided no further evidence showing attempts to gain access to the property. Karen Stubbe testified on behalf of [Mauer Vision] that no request was made to inspect the property after the call from [Alta Vista] on May 24, 2012, approximately two months prior to the Dahlstrom offer. No evidence was provided to the court of any request to view the property after any offer had been made.

Attorney Kirsten Arnold of the Beecher law firm sent to the attorney for [Mauer Vision] a letter dated July 26, 2012. This letter gave [Mauer Vision] notice of the proposed sale and involved [Mauer Vision's] right of first refusal to purchase the property at the contract purchase price. Although the Beecher firm represented [Alta Vista], Sulentic and Dahlstrom, no request was made to [Mauer Vision] for access to the property.

After Dahlstrom withdrew his offer to purchase the property, [Alta Vista] sold the property in question in conjunction with a property located in Waterloo, Iowa. [Alta Vista] determined that that amount of the total purchase price allocated to the purchase of the Waverly property to be $600,000.[4] [Mauer Vision] exercised his right of first refusal and purchased the Waverly property for $600,000.

. . . .

No issue exists as to the existence of the contract or that [Alta Vista] has performed all that was required of [it] under the terms of the contract. The Supreme Court in its decision filed October 31, 2014, has determined that as a term of the contract, [Mauer Vision] was required to make the property available for viewing by prospective buyers. [Alta Vista] has, however, failed to prove that [Mauer Vision] breached the terms of the contract or failed to make the property available for buyers.

The evidence presented to this court established that at some time prior to May 24, 2012, Jim Sulentic or someone on his

---

[4] Stroh testified, "I thought that's the most we could get out of it . . . ."

behalf contacted [Mauer Vision] and requested that the property be available for inspection by prospective buyers. Although originally agreeing to an inspection, after speaking with [Mauer Vision] and legal counsel, Karen Stubbe advised that the property would not be available for inspection.

Still prior to May 24, 2012, a person identifying herself as an attorney for [Alta Vista] spoke with Stubbe and again requested an inspection of the property. Stubbe referred this person to her legal counsel. No evidence was presented to the court that the referral to legal counsel was ever followed up upon by counsel for [Alta Vista]. [Alta Vista] never requested nor was [Alta Vista] denied access to the property after [Alta Vista] had been referred to [Mauer Vision]'s legal counsel. [Alta Vista's] personal call to [Mauer Vision] on May 24, 2012, contained only threats and obscenities but made no request that potential buyers be allowed to view the property. Without a request to view the property, [Alta Vista] has failed to show that [Mauer Vision] breached the contract by refusing access to the property to potential buyers. Because [Alta Vista] has failed to prove an element required for recovery, their action must be dismissed.

The court concluded Alta Vista failed to prove a breach of the lease and dismissed the action.

Alta Vista now appeals, contending the trial court erred in not finding a breach of the lease. It argues the supreme court found Mauer Vision had denied access to Alta Vista. Alta Vista asserts this means the court necessarily found a breach of the lease, and the district court was precluded from finding otherwise.[5] We reject this argument.

---

[5] Mauer Vision contends the issue was not properly preserved. We note, however, that in its trial brief, Alta Vista did assert,

It is [Alta Vista]'s contention that Dr. Mauer and Mauer Vision Center breached the lease by refusing access to give the landlord access to the leased property at reasonable times for purposes of showing the property to prospective purchasers, and that the Supreme Court's ruling conclusively establishes this breach. As a result of this breach, the landlord, ([Alta Vista] in this case), lost out on two prospective purchasers who were willing to pay $950,000.00 for this property, which was $50,000.00 more than what Alta Vista paid for the property six years previously.

Alta Vista misreads the supreme court's opinion. The supreme court's "task [was] to determine whether the landlord is authorized to enter the leased property to show it to potential buyers." *Id.* at 723. The court concluded: "[T]he lease gives Alta Vista the right to access the premises temporarily at reasonable times to show the property to prospective buyers." *Id.* at 732. The other statements in the opinion upon which Alta Vista relies were not material, relevant, or necessary to the appeal issue, and thus, are not binding in this later breach-of-contract action.[6] *See Am. Family Mut. Ins. Co. v. Allied Mut. Ins. Co.*, 562 N.W.2d 159, 163-64 (Iowa 1997) (setting out factors necessary for issue preclusion).

Further, even if we accept Alta Vista's contention that the supreme court determined Mauer Vision had denied access, the supreme court did not conclude the refusal was related to Dahlstrom's offer or caused the offer to be withdrawn. Alta Vista's damages arise, if at all, from the differential between the purchase offer and the actual sales price. Accordingly, Alta Vista was required to show Mauer Vision refused to allow Dahlstrom and Alta Vista access after the purchase offer was signed and the lack of access caused Dahlstrom to withdraw his offer. The trial court found that Stubbe's refusal of access occurred before the purchase offer was entered into. Alta Vista has not cited any authority for the premise that the then-pending litigation concerning the interpretation of the lease,

---

[6] Alta Vista also argues the district court and this court made findings in the declaratory action that Mauer Vision breached the lease. No court made a finding of breach in the declaratory-judgment action. Any statement in this court's opinion as to a denial of access (which is not necessarily a breach) in any event is of no consequence as this court's opinion was vacated. *See Hills Bank & Tr. Co. v. Converse*, 772 N.W.2d 764, 770 (Iowa 2009) (explaining the consequence of vacating a court of appeals opinion in part).

or past refusals, can substitute for a new breach of contract causing damages. The damages must naturally arise from the breach. *Meyer v. Nottger*, 241 N.W.2d 911, 920 (Iowa 1976). In sum, Alta Vista may not bootstrap past refusals of access to serve as causation for subsequent damages.

We also reject Alta Vista's assertion that the trial court's findings are not supported by substantial evidence. Viewing the evidence in the light most favorable to the facts found by the trial court, and giving special deference to its ability to view and assess the credibility of the witnesses, we conclude there is sufficient evidence to uphold the judgment. *See Land O'Lakes, Inc. v. Hanig*, 610 N.W.2d 518, 522 (Iowa 2000) (stating we "view the evidence in a light most favorable" to the judgment and noting the court's "findings of fact have the effect of a special verdict and are binding if supported by substantial evidence," and evidence is substantial "when a reasonable mind would accept it as adequate to reach a conclusion" (citations omitted)). We affirm.

**AFFIRMED.**