Allen E. KROBLIN and Roger C. Dahlgaard, Appellees,

v.

RDR MOTELS, INC., Appellant.

No. 83–919.

Supreme Court of Iowa.

April 11, 1984.

L. Don Snow and Leslie Ann Knock, of Mershon, Snow, Knock & Moothart, Cedar Falls, for appellant.

Hugh M. Field and Paula J. Larson, of Beecher, Beecher, Holmes & Rathert, Waterloo, for appellees.

Considered by HARRIS, P.J., and McCORMICK, McGIVERIN, SCHULTZ and WOLLE, JJ.

WOLLE, Justice.

This case involves a dispute over the purchase price to be paid by the buyer for the corporate stock of several corporations which owned and operated the Twin Torch Inn, a Waterloo motel. The buyer RDR Motels, Incorporated [buyer] appeals from an adverse decision in a declaratory judgment action brought by the sellers, Allen F. Kroblin and Roger C. Dahlgaard [sellers]. The buyer first contends that the contract of purchase was clear and precise, therefore the trial court erred in considering extrinsic evidence of its meaning. Secondly, the buyer contends that the parties

were mutually mistaken as to the price, therefore the contract should be reformed. Finally, the buyer requests a new trial because the trial court adopted as its rulings on post-trial motions detailed findings which were prepared by counsel for the sellers upon direction given by the court in an ex parte communication. Although we disapprove the manner in which the trial court obtained and used the proposed rulings prepared by counsel, we find no merit in the buyer's assignments of error and affirm.

## I. *Background Facts.*

The sellers and the buyer entered into a written contract for stock purchase on October 31, 1975, and agreed to sign another contract once the three corporations that owned the motel property were merged. The final written contract was signed on December 17, 1975. Both contracts provided that the purchase price was "$850,-000.00 plus the excess of current assets over current liabilities less long-term liabilities." The contract did not contain other language more specifically allocating between the parties the general property taxes on the motel. The sellers and the buyer each contend that the other was responsible for paying the taxes which were due but unpaid at the time the motel property was transferred. Consequently, at the core of this lawsuit is the question whether the language "excess of current assets over current liabilities" unmistakably required one party or the other to bear the burden of these taxes.

The buyer contended that the unpaid property taxes were unquestionably "current liabilities" and therefore extrinsic evidence to the contrary should not have been considered. The buyer's principal officer, Ronald Roberts, testified that the parties' accountants were to calculate the exact price by applying the contract's assets-liabilities formula to the corporation's financial statements.

The sellers, on the other hand, contended that the parties agreed to treat certain real estate taxes as prepaid and therefore "current assets" for purposes of calculating the purchase price. The sellers offered extrinsic evidence—both testimony and documentary evidence—to explain how the parties intended to apply the contract's assets-liabilities formula to property taxes. Roger Dahlgaard, who negotiated the sale, testified that he told the buyer's principal officer Roberts during their negotiations that he understood real estate taxes to be prepaid, meaning paid for the current year. He said he asked and obtained assurance that the price would be based on that understanding. The sellers also relied heavily on Exhibit B, a handwritten list of various assets and liabilities which was prepared at the time the buyer took possession of the motel, reviewed by both Dahlgaard and Roberts, and then initialed by both of them. One of the current assets listed on that document was "prepaid land taxes ... $3,965.63." The sellers insist that that memorandum, together with the conversations between Dahlgaard and Roberts, showed that the parties intended certain current taxes to be treated as an asset, regardless whether such taxes would ordinarily be considered to be a liability for accounting purposes.

Both the sellers and buyer were represented by lawyers and accountants in negotiating and completing the transaction. Both the sellers and buyer had also had extensive experience in handling the purchase and sale of businesses. For nearly two years after the buyer took possession of the motel, the buyer made regular interest payments on the unpaid purchase price, using as a purchase price a figure which was consistent with the sellers' interpretation of the contract language. At trial, to support its own interpretation of the contract, the buyer itself proffered testimony of its own accountant as to what would be a proper computation of the purchase price "under the contract and in accordance with good accounting principles."

## II. *The Trial Court's Consideration of Extrinsic Evidence.*

The buyer contends that the trial court erred in considering extrinsic evidence, arguing that the phrase "current

assets over current liabilities" was clear, precise and susceptible to only one reasonable interpretation as to what taxes were owed by each party to the transaction. We disagree. Established principles of contract interpretation and the circumstances of this case support the trial court's consideration of the extrinsic evidence offered by the parties to determine what their contractual language meant.

■ We need not repeat the extensive discussion in several Iowa cases which explain when extrinsic evidence may properly be used. Contract interpretation involves ascertaining the meaning of contractual words, and extrinsic evidence is admissible as an aid to interpretation when it sheds light on the situation of the parties, antecedent negotiations, the attendant circumstances, and the objects they were striving to attain. *Fashion Fabrics of Iowa, Inc. v. Retail Investors Corp.*, 266 N.W.2d 22, 25 (Iowa 1978); *Hamilton v. Wosepka*, 261 Iowa 299, 306–13, 154 N.W.2d 164, 168–72 (1967) (cataloguing cases and statements of commentators as to when parol evidence may be used to interpret and explain contracts). Here, the contract itself made no mention of property taxes and did not include sufficient financial data, incorporated by reference or otherwise, to enable the parties to insert exact numbers into the assets-liabilities formula. Even the buyer was required to offer its accountant's testimony to establish the exact price it intended to pay.

■ The buyer's reliance on the parol evidence rule is misplaced. When applicable, the parol evidence rule excludes extrinsic evidence which is solely offered for the purpose of varying, adding to, or subtracting from a written agreement. *Montgomery Properties Corporation v. Economy Forms Corporation*, 305 N.W.2d 470, 476 (Iowa 1981); *Pappas v. Hauser*, 197 N.W.2d 607, 611 (Iowa 1972). Among the exceptions to the parol evidence rule, however, is the principle that extrinsic evidence may be admitted to show that a writing is not an integrated agreement, not completely clear and unambiguous as to the subject

in dispute, or ambiguous with respect to the subject of the lawsuit. *In re Eickman Estate*, 291 N.W.2d 308, 312 (Iowa 1980); *Fashion Fabrics of Iowa, Inc., v. Retail Investors Corp.*, 266 N.W.2d at 25. Here, the language chosen by the parties for their written agreement simply did not unequivocally fix the rights and obligations of the parties with respect to general taxes on the motel property. The buyer itself has not shown that the court could have decided upon a specific agreed price without resorting to documentary evidence furnished by the buyer's accountants. Neither the sellers' evidence nor that introduced by the buyer was offered to change or vary the words of the contract; that evidence was offered to explain how the parties intended their assets-liabilities formula to apply to the financial accounts of the motel corporation. "Proof of the circumstances may make a meaning plain and clear when in absence of such proof some other meaning may also have seemed plain and clear." *Hamilton v. Wosepka*, 261 Iowa at 312, 154 N.W.2d at 171.

■ The buyer also contends that the trial court improperly considered the fact that the buyer made monthly payments of interest to the sellers for nearly two years after the sale based upon the sellers' interpretation of what the purchase price should be. Again, we conclude that the trial court properly could consider that evidence in deciding what the parties meant by what their contract said. A document will be read in the light of surrounding circumstances and given such practical construction as they themselves have placed upon it. *Lovlie v. Plumb*, 250 N.W.2d 56, 59 (Iowa 1977); *see also Village Supply Co. v. Iowa Fund, Inc.*, 312 N.W.2d 551, 555 (Iowa 1981) ("The practical construction placed on an agreement by the parties will be given effect.").

III. *The Buyer's Request for Reformation.*

The buyer in its brief alternatively requests that if extrinsic evidence was properly considered, then the exhibit B hand-

written memorandum should now be "reformed" because "all parties were mistaken when they believed the land taxes were in fact prepaid." At the outset, however, we note the buyer's concession in its brief that it did not seek reformation of the contract at any time during the proceedings in the trial court. Neither did it contend at any time during the trial that either the written contract or the exhibit B memorandum initialed by the parties was the product of a mutual mistake.

It is axiomatic that we will not ordinarily consider issues raised for the first time on appeal. *See, e.g., Davoren v. Iowa Employment Security Commission,* 277 N.W.2d 602, 603 (Iowa 1979); *Lemon v. City of Muscatine,* 272 N.W.2d 429, 430 (Iowa 1978). The request for reformation is not properly before us because it is based on a theory of mutual mistake which was not presented to the trial court.

IV. *The Buyer's Request for a New Trial.*

In its final assignment of error the buyer contends that it should be granted a new trial because counsel for the sellers, at the trial court's direction, drafted the final rulings on post-trial motions.

The record shows that the trial court first decided this jury-waived law case by filing a relatively brief one-page decision on July 24, 1981 finding the contract price to be $425,015.00. The buyer then filed post-trial motions which asserted very specific grounds for relief. Its motion for a new trial alleged that the court had erred in referring to an escrow agreement rather than the parties' written contract and in finding that the price was $1000 greater than requested in the prayer of the sellers' petition. Its motion filed pursuant to Iowa Rule of Civil Procedure 179(b) asked the court to enlarge or amend its findings to rule specifically on whether the general taxes on the motel had in fact been prepaid.

More than twenty-two months after the motions were filed, the trial court orally requested that the sellers' attorney prepare orders denying the motions. The attorney did so and mailed the orders to the court, sending to the buyer's attorney a copy of his cover letter but not copies of the proposed orders. The trial court then signed and filed those orders. The one-page nunc pro tunc order eliminated the erroneous reference to the parties' escrow agreement, reduced by $1000 the purchase price fixed in the decree, and thereby corrected the two factual mistakes on which the buyer had based its motion for a new trial. The six-page order ruling on the buyer's post-trial motions included detailed findings of fact and conclusions of law to buttress the trial court's amended declaratory judgment which found the purchase price to be $424,015.00 as the sellers had alleged.

To support its claim that under these circumstances we should reverse and remand for a new trial, the buyer contends in its brief:

> The practical result is that the trial court indicated how [it] wanted to rule and the plaintiff's counsel attempted to make the ruling "Supreme Court Proof." By finding as a matter of fact and law those matters which the plaintiff had alleged through the trial, and were not found or considered by the court in the original ruling, the defendant has an almost insurmountable burden in trying to overcome said judgment. The only practical method of resolving this situation is to set a new trial before the court for a determination of those matters.

The sellers respond that the buyer has presented "no legal or logical basis for reversal of this case as a result of this common practice."

We first address the questions of whether and under what circumstances a trial court may properly request the assistance of counsel in drafting rulings, orders, judgments and decrees, then the question of whether in this case the buyer is entitled to a new trial because the court adopted orders proposed by the sellers' counsel.

Many courts have recognized as a common practice the post-trial submission by counsel of proposed findings, conclusions,

orders and decrees. *See, e.g., Louis Dreyfus & Cie. v. Panama Canal Co.,* 298 F.2d 733, 737 (5th Cir.1962); *Compton v. Gilmore,* 98 Idaho 190, 193, 560 P.2d 861, 864 (1977). *See generally* 9 C. Wright & A. Miller, Federal Practice and Procedure § 2578 (1971); Annot., 54 A.L.R.3d 868 (1973) ("Propriety and Effect of Trial Court's Adoption of Findings Prepared by Prevailing Party"). Trial counsel's thorough preparation and articulation of suggested findings of fact and conclusions of law, accompanied by references to particular testimony and exhibits, can be of great assistance to the trial court, especially in highly technical or complicated cases. *See In re Las Colinas, Inc.,* 426 F.2d 1005, 1008 (1st Cir.1970) *cert. denied,* 405 U.S. 1067, 92 S.Ct. 1502, 31 L.Ed.2d 797 (1972); *Crown Machine & Tool Co. v. D & S Industries, Inc.,* 270 F.Supp. 271, 280 (D.Ariz.1967), *aff'd* 409 F.2d 1307 (9th Cir.), *cert. denied,* 396 U.S. 824, 90 S.Ct. 66, 24 L.Ed.2d 75 (1969); *Delevan-Delta Corp. v. Roberts,* 611 S.W.2d 51, 53 (Tenn.1981). Many courts have sharply criticized the practice, however, suggesting that if the trial court adopts verbatim the findings prepared by winning counsel it may appear that the court has abdicated its role of fact-finder as well as decision-maker. *See, e.g., Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 258 (5th Cir.) *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980); *Chicopee Manufacturing Corp. v. Kendall Co.,* 288 F.2d 719, 724–25 (4th Cir.) *cert. denied,* 368 U.S. 825, 82 S.Ct. 44, 7 L.Ed.2d 29. (1961) (counsel's preparation of opinion, without notice to opposing party, may amount to denial of due process). The United States Supreme Court itself criticized findings of fact which had been submitted by counsel and adopted verbatim by the trial court. The Court held that the findings were formally the court's and would stand if supported by evidence, but it clearly stated its preference for those "drawn with the insight of a disinterested mind" which thereby "reveal the discerning line for decision of the basic issue in the case." *United States v. El Paso Natural Gas Co.,* 376 U.S. 651, 656–

57, 84 S.Ct. 1044, 1047, 12 L.Ed.2d 12, 17 (1964) (dictum). "All courts agree that finding the facts is an important part of the judicial function and that the judge cannot surrender this function to counsel." 9 Wright & Miller, § 2578, at 705.

■ Detailed written decisions are often required by court rule, particularly when a judge tries an issue of fact without a jury. *See, e.g.,* Fed.R.Civ.P. 52(a); Iowa R.Civ.P. 179(a); Mass.R.Civ.P. 52(a). The purpose of such rules is threefold: (1) the quality of the judge's decision-making process is enhanced by requiring simultaneous articulation of the judge's underlying reasoning; (2) the parties receive assurance that their contentions have been fully and fairly considered; and (3) appellate courts can readily ascertain the specific factual and legal bases for the court's decision. *See Roberts v. Ross,* 344 F.2d 747, 751–52 (3d Cir.1965); *Cormier v. Carty,* 381 Mass. 234, 236, 408 N.E.2d 860, 862–63 (1980). These purposes may not adequately be served to the extent that the trial court delegates to counsel its own responsibility to scrutinize the record, select apt principles of law, and fully articulate the bases for a sound, fair decision.

■ We believe the better practice is that spelled out in *Bradley v. Maryland Casualty Co.:*

> We venture to suggest that if, because of prevailing custom, or pressure of work, or a case's technical nature, or for other reasons, counsel must be asked to assist in the preparation of findings and conclusions, it is better practice to make this request at or soon after the submission of the case and prior to decision and to make it of both sides. 5 Moore's Federal Practice (2d ed. 1966), par. 52.-06[3], p. 2665. Then the court may pick and choose and temper and select those portions which better fit its own concept of the case.

382 F.2d 415, 423–24 (8th Cir.1967) (Blackmun, J.) (dictum). We further emphasize that in fairness all parties should be given the same opportunity to submit proposed findings and to comment on findings pro-

posed by others. The Iowa Code of Judicial Conduct provides in relevant part:

> A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding.

Canon 3 A(4), Iowa Code of Judicial Conduct.

■ Turning to the circumstances of this case, we conclude that the buyer has failed to establish that its substantial rights were adversely affected by the trial court's reliance on counsel in drafting the orders which overruled the buyer's post-trial motions. Our affirmance of the trial court on the specific issues here raised by the buyer has not turned on the substantive content of the findings of fact or reasons given for the rulings proposed by the sellers' counsel and adopted as its own by the trial court. As explained in division II above the trial court properly considered extrinsic evidence in ascertaining the parties' intent and then accounting for property taxes as a part of the final purchase price. The buyer made no request that the trial court reform the contract documents, so neither the trial court nor this court could properly consider the issue of mutual mistake. Moreover, the specific grounds on which the buyer requested a new trial—mistakes of fact in the trial court's initial decision—were corrected by order nunc pro tunc, and the buyer does not here challenge the entry of that order. The buyer does not in this appeal contend that any particular finding of fact or conclusion of law proposed by sellers' counsel and adopted by the court was unsupported by the evidence or incorrect except to the extent already considered and affirmed. Consequently, even though we disapprove the trial court's ex parte request for proposed rulings, we find that the buyer has not been harmed by being deprived of its right to submit its own proposed rulings and comment on those suggested by the sellers' counsel.

Because the buyer has made no showing that the trial court's actions materially and adversely affected its substantial rights, we conclude that the buyer is not entitled to a new trial on any of the grounds it has asserted in this appeal. Iowa R.Civ.P. 244; Iowa R.App.P. 14(f)(3), (4).

■ We do here note our disapproval of the inordinate length of time which elapsed between the one-day trial on May 19, 1980 and the filing of the trial court's rulings on post-trial motions on June 17, 1983. Our trial judges labor under heavy caseloads, but delays of that magnitude are inexcusable and intolerable.

AFFIRMED.