# IN THE SUPREME COURT OF IOWA

No. 21–0455

Submitted January 18, 2023—Filed March 3, 2023

**U.S. BANK, National Association,**

    Appellee,

vs.

**JEFFREY S. BITTNER,** Individually and as **Trustee of the JOAN Y. BITTNER MARITAL TRUST,**

    Appellant,

and

**MIDWESTONE BANK, as Conservator of the JOAN Y. BITTNER MARITAL TRUST,**

    Appellee,

and

JOAN Y. BITTNER, KIMBERLY MONTGOMERY, TODD RICHARD BITTNER, and LYNN VON SCHNEIDAU,

    Defendants.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Scott County, Thomas Reidel, Judge.

One of the decedent's children seeks further review of a court of appeals decision affirming a district court order awarding the decedent's individual

retirement account to the decedent's spouse. **DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

Mansfield, J., delivered the opinion of the court, in which all participating justices joined. Waterman and May, JJ., took no part in the consideration or decision of the case.

Jeffrey S. Bittner, Davenport, and M. Leanne Tyler, Bettendorf (limited appearance), for appellant.

Lynn W. Hartman and Nicholas D.K. Petersen of Simmons Perrine Moyer Bergman PLC, Cedar Rapids, for appellee U.S. Bank, N.A.

Timothy J. Krumm and Danica L. Bird of Meardon, Sueppel & Downer, P.L.C., Iowa City, for appellee MidWestOne Bank, as Conservator of the Joan Y. Bittner Marital Trust.

**MANSFIELD, Justice.**

### I. Introduction.

Contract interpretation can involve somewhat of a paradox. Extrinsic evidence may be used to interpret an integrated agreement but not to alter its terms. As a practical matter, this means that an agreement first needs to be examined by the court in light of relevant extrinsic evidence before such evidence is turned away on the ground that it contradicts the agreement's terms. This approach sounds counterintuitive, but it is supported by our caselaw and the Restatement (Second) of Contracts. Context may not be "king," *Des Moines Flying Serv., Inc. v. Aerial Servs. Inc.*, 880 N.W.2d 212, 221 (Iowa 2016) (using that expression with regard to statutory interpretation), but it is at least part of the royal family, and a court should not ignore context before it determines the unambiguous meaning of an agreement.

Here, one of four children of the decedent faces a steep uphill climb in a case of contract interpretation. He argues that his father's Individual Retirement Account (IRA) beneficiary designation, which begins by stating that the decedent's spouse is the 100% primary beneficiary of the IRA, actually designates an unnamed family trust as the primary beneficiary. On further review, we hold that the district court should not have short-circuited this child's claim by ruling that the beneficiary designation was unambiguous without there being a need to consider extrinsic evidence. Yet having said that, we are capable here of examining the extrinsic evidence as contained in the son's offer of proof. And after reviewing that evidence, we too conclude that the designation

unambiguously conveys the IRA to the decedent's spouse rather than the unnamed family trust. Accordingly, we affirm both the district court judgment and the decision of the court of appeals.

**II. Facts and Procedural History.**

**A. The Parties.** R. Richard Bittner, a longtime Iowa attorney, passed away in February 2019 at the age of ninety. His surviving family included his wife, Joan Y. Bittner, and their four children: Kimberly Montgomery, Jeffrey Bittner, Todd Bittner, and Lynn Von Schneidau. Joan is currently under a conservatorship. Jeffrey, like his late father, is an attorney. Jeffrey is the appellant in this case.

Richard accumulated considerable real and personal property assets during his lifetime. These assets included an IRA worth over $3 million. U.S. Bank, N.A. served as the trustee for that IRA.

**B. The 2010 Will.** During his lifetime, Richard prepared and signed several wills, each of which revoked his prior wills. One of those wills was executed on January 11, 2010. Subject to certain specific devises and bequests, it provided that Richard's estate would go to the Joan Y. Bittner Marital Trust (Marital Trust) to the extent necessary to ensure that no federal estate tax would be paid; the balance would go to the R. Richard Bittner Family Trust (Family Trust). Thus, the will made the Family Trust a residual beneficiary:

> While I have, during my lifetime, attempted to equalize the value of assets owned by me and those owned by my wife, I have not succeeded. The assets standing in my name substantially exceed those in the name of JOAN Y. BITTNER. I have therefore concluded to establish a family trust which will make full use and benefit of all tax credits and deductions (other than the marital deduction)

allowed to my estate for federal estate tax purposes. Therefore, and except to the extent of the JOAN Y. BITTNER MARITAL TRUST and the specific bequests to my children as hereinafter provided, all of the rest, residue and remainder of my estate I do hereby give, devise and bequeath to the R. RICHARD BITTNER FAMILY TRUST for the use and benefit of my wife and my descendants as therein provided.

At the same time, the will contained a complicated provision dealing with the IRA and the Marital Trust:

> There shall be specifically included in the JOAN Y. BITTNER MARITAL TRUST, the value of any and all interest received by such trust attributable to a beneficiary designation with respect to my Individual Retirement Account ("IRA"). Provided, however, that there shall be included in the JOAN Y. BITTNER MARITAL TRUST, for the purpose of achieving an equalization of the assets to assure sufficient assets as will result in no federal estate tax and only that portion of my IRA as is necessary to achieve the asset transfers that are necessary to result in no federal estate tax. If and in the event there is no federal estate tax in force at the date of my demise and in the event JOAN Y. BITTNER survives me, she shall be entitled to all of the required distributions from such IRA during her lifetime and upon her death or in the event she does not survive me, then the balance of my IRA shall pass to and be distributed under the R. RICHARD BITTNER FAMILY TRUST . . . .

In addition, an article of the will devoted to one of Richard's daughters referred to the IRA:

> A substantial part of the income for the benefit of my daughter will be income from my IRA and it is my hope and expectation that my daughter, LYNN VON SCHNEIDAU, will elect the option which extends the payment of the income from such trust over the longest period of time available at the time that she becomes entitled to her share of that income.

**C. The IRA Beneficiary Designation.** On the same day that he executed the 2010 will, Richard dictated and signed a new beneficiary designation for the IRA. The designation took the form of a separate, typed addendum. Under the heading, "Primary Beneficiary," Richard identified "Joan Y. Bittner" and

indicated that her share was "100%." Beneath her name and information, Richard added the following paragraphs:

> My wife, Joan Y. Bittner, is and shall be a primary beneficiary under my IRA Account No. XXXXXX which is currently administered by U.S. Bank, N.A. Joan Y[.] Bittner is the primary beneficiary under the Joan Y. Bittner Marital Trust under my Last Will & Testament dated January 11, 2010 and she shall be entitled to all annual distributions from my IRA based upon her life expectancy under the then applicable federal income tax rules and regulations.
>
> The value of such IRA, to the extent necessary to achieve the marital deduction which shall result, shall be included in the Joan Y. Bittner Marital Trust.
>
> That part of my IRA which is necessary to achieve the minimum marital deduction which will result in no federal income tax is devised to the Joan Y. Bittner Marital Trust with respect to which Joan Y. Bittner is the beneficiary.

The addendum contained an additional section with the heading, "Contingent Beneficiaries." Beneath that heading, Richard listed his four children by name and indicated that each would receive a "25%" share. Below their names and identifying information, Richard included the following paragraph:

> Upon the death of my wife, my children, Kimberly Montgomery, Jeffrey S. Bittner, Todd R. Bittner and Lynn Von Schneidau, shall become the primary beneficiaries and each shall have an equal share. In the event any child of mine shall not survive me and my wife and is survived by descendants, then such descendants shall succeed to the interest of my child (or children) herein.

Separate from the addendum, Richard checked a box under "Successor Beneficiary(ies)" on the preprinted portion of the beneficiary designation form. The purpose of this box was to indicate what should happen "[i]f a beneficiary who survives me dies before his or her entire interest in the IRA has been

distributed." The form instructions specifically stated, "Not applicable if Trust or Estate is beneficiary." Nonetheless, Richard checked one of the boxes and thereby selected "[t]he then living descendants, per stirpes, of the deceased beneficiary" as successor beneficiaries of the IRA.

**D. The 2014 Will.** On January 7, 2014, Richard executed a new will, revoking the 2010 will. The 2014 will provided generally for an equal division of assets between the Marital Trust and the Family Trust, subject to certain specific devises and bequests. As before, there was a complicated paragraph dealing with the Marital Trust and the IRA:

> There shall be specifically included in the JOAN Y. BITTNER MARITAL TRUST, the value of any and all interest received by such trust attributable to a beneficiary designation with respect to my Individual Retirement Account ("IRA"). Provided, however, that there shall be included in the JOAN Y. BITTNER MARITAL TRUST, for the purpose of achieving an equalization of the assets to assure sufficient assets as will result in no federal estate tax and only that portion of my IRA as is necessary to achieve the asset transfers that are necessary to result in no federal estate tax. If and in the event there is no federal estate tax in force at the date of my demise and in the event JOAN Y. BITTNER survives me, she shall be entitled to all of the required distributions from such IRA during her lifetime and upon her death or in the event she does not survive me, then the balance of my IRA shall pass to and be distributed as set forth in the beneficiary designation on file with U.S. Bank, N.A. as Trustee of the IRA Trust established by me.

Notably, whereas the 2010 will seemingly contemplated a potential division of the IRA between the Marital Trust and *the Family Trust*, this part of the 2014 will mentioned only the Marital Trust and "*the beneficiary designation on file with U.S. Bank*." (Emphasis added.)

Like the 2010 will, the 2014 will also had an article relating to one of Richard's daughters that referenced the IRA:

A substantial part of the income for the benefit of my daughter will be income from my IRA and it is my hope and expectation that my daughter, LYNN VON SCHNEIDAU, will elect the option which extends the payment of the income from such trust over the longest period of time available at the time that she becomes entitled to her share of that income.

**E. Subsequent Developments.** On March 24, 2017, Richard executed an updated IRA agreement with U.S. Bank that did not alter the 2010 beneficiary designation.

Following Richard's death in February 2019, his 2014 will was admitted to probate in Scott County. On July 29, 2020, U.S. Bank, as the IRA trustee, filed a separate petition for declaratory judgment in the district court seeking a judicial declaration of the beneficiaries of the IRA. The petition named Joan, MidWestOne Bank (as Joan's conservator), the four Bittner children, and the Marital Trust as defendants. Relying on the designation of Joan as the "primary beneficiary" with a "100%" share in the first part of the addendum, U.S. Bank took the position that the entire IRA should be transferred to her.

MidWestOne Bank, acting in its capacity as Joan's conservator, answered the petition and agreed that the IRA should be transferred to Joan. Three of Richard's children—Kimberly, Todd, and Lynn—likewise accepted U.S. Bank's position. Jeffrey, however, answered separately and objected to the outright transfer of the IRA to Joan. He argued that the IRA account should be conveyed to the Marital Trust or the Family Trust. He also counterclaimed against U.S. Bank, alleging that it was operating under a conflict of interest since it was acting as both the IRA trustee and a co-executor of Richard's estate.

**F. The Hearing on Jeffrey's Declaratory Judgment Petition.** On January 26–27, 2021, the district court held an evidentiary hearing on the declaratory judgment petition. U.S. Bank and MidWestOne argued that the IRA beneficiary designation to Joan was unambiguous and objected to much of Jeffrey's proffered evidence under the parol-evidence rule. The objected-to evidence included testimony from a former legal colleague of Richard, a former secretary to Richard, and Jeffrey; memos and correspondence generated by U.S. Bank; the superseded 2010 will; and other previous wills and IRA beneficiary designations executed by Richard. The district court generally sustained these objections, but it allowed Jeffrey to submit the evidence in the form of an offer of proof.[1]

On March 17, the district court issued two rulings. In one, it addressed Jeffrey's claim of conflict of interest. Although it did not find a conflict of interest,

---

[1]Jeffrey claimed that U.S. Bank had originally concluded that Joan should not receive the IRA outright. On April 25, 2019, Sarah Maiers of U.S. Bank wrote a memo addressing issues regarding the IRA. The memo first stated that the preferred course of action would be to re-register the account in Joan's name. She then said, "BUT that is not what the beneficiary designation says—Joan, as an individual, is not the beneficiary—the marital trust is the beneficiary." Maiers continued on to say, "That brings us back to a discussion about whether or not there will be a Marital Trust. . . . So if a Marital Trust is not established, then is the beneficiary of this IRA Joan, as an individual, where she can roll this over into her existing IRA?" Below that, she listed issues that need to be addressed; one of the issues was, "[W]ill the IRA be a spousal rollover?"

Not long after, Maiers sent an email to Jeffrey's counsel. In it, she said,

> You already have the amount of [Richard]'s IRA and the [required minimum distributions] for this year, I believe, and also the beneficiary is the marital trust. As stated before, we need to discuss whether or not there will be a marital trust or if Joan is the primary beneficiary and can make this her own IRA.

Later, U.S. Bank employees convened a meeting on these issues, and Maiers issued a memo on May 30 conveying their determination. They ultimately determined that the IRA belonged to Joan and not the Marital Trust—i.e., the position formally taken by the bank in the declaratory judgment action.

it nonetheless removed U.S. Bank as co-executor of Richard's estate based upon a provision in Richard's will that permitted Jeffrey (the other co-executor) to remove U.S. Bank if he was dissatisfied with the Bank's performance. This removal order was entered in the probate proceeding, and U.S. Bank did not appeal it.

In its second ruling, the district court determined that Joan should receive the entire IRA account outright. Here, the district court said,

> [T]he intent of Richard is clear and unambiguous from the words of the contract itself, and [the Court] can decide this matter without the necessity of extrinsic evidence.
>
> . . . .
>
> Richard's intent to name his wife, Joan Y. Bittner, as the primary beneficiary under his IRA account, which is currently administered by U.S. Bank, is clear and unambiguous from the words of the contract itself. Richard did not name the trust as the primary beneficiary. Richard used clear and unequivocal language designating his wife, Joan, as the 100 percent primary beneficiary. The remaining language in the IRA beneficiary designation does not support a contrary interpretation nor does it create ambiguity.
>
> The Court specifically notes that Richard designated Joan as the 100 percent primary beneficiary. Richard elected to name his children as contingent beneficiaries despite the clear language of the IRA beneficiary designation form that this was not necessary if a trust or estate were listed as the primary beneficiary. . . .
>
> . . . .
>
> Jeffrey relies upon Richard's subjective desires and his firm belief that Richard did not wish for Joan to have a sizeable distribution directly to her. However, even if applicable, this does not overcome the clear language set forth in the IRA beneficiary designation.

**G. Jeffrey's Appeal.** Jeffrey appealed this ruling. We transferred the case to the court of appeals, which affirmed the district court. The court of appeals'

reasoning echoed that of the district court in large part. It noted, "[Richard] did not name the marital or family trust in section A as a primary beneficiary. In fact, the family trust was not named in the beneficiary designation at all." Further, the court found the beneficiary designation unambiguous and thus did not "resort to any extrinsic evidence" to aid in its interpretation.

Jeffrey applied for further review, and we granted his application.

**III. Standard of Review.**

This action was tried at law. We review matters of contract interpretation for correction of errors at law. *Colwell v. MCNA Ins.*, 960 N.W.2d 675, 676–77 (Iowa 2021). "Interpretation of a contract is a legal issue unless the interpretation of the contract depends on extrinsic evidence." *Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 435 (Iowa 2008). If the interpretation depends upon "the credibility of extrinsic evidence or on a choice among reasonable inferences that can be drawn from the extrinsic evidence," it is a job for the fact finder. *Id.* at 436.

**IV. Legal Analysis.**

**A. Relevant Principles of Contract Law.** An IRA is "a trust created or organized . . . for the exclusive benefit of an individual or his beneficiaries." 26 U.S.C. § 408(a). It is also a form of contract. *See Alexander v. McEwen*, 239 S.W.3d 519, 522 (Ark. 2006) ("An IRA constitutes a contract between the person who establishes the IRA for his or her retirement and the financial institution that acts as the custodian for the IRA."). The IRA's beneficiaries are deemed third-party beneficiaries of the contract. *See Luszcz v. Lavoie*, 787 So. 2d 245,

248 (Fla. Dist. Ct. App. 2001) (en banc) (characterizing an IRA as "a contract with an institution that involves a third-party beneficiary designation"); *UBS Fin. Servs., Inc. v. Aliberti*, 133 N.E.3d 277, 291 (Mass. 2019) ("Because Aliberti is a designated beneficiary of each IRA, she is an intended third-party beneficiary of the contracts . . . .").

In 2017, Richard executed a renewed "Individual Retirement Account Trust Agreement" with U.S. Bank. Richard's preexisting 2010 IRA beneficiary designation became part of that agreement, and the beneficiaries that it established are deemed third-party beneficiaries of the contract. Because the IRA is a contract, "we apply ordinary contract principles to determine its meaning and legal effect" and "thus consider the [agreement] as a whole as well as any pertinent extrinsic evidence." *Alta Vista Props., LLC v. Mauer Vision Ctr., PC*, 855 N.W.2d 722, 727 (Iowa 2014) (citation omitted).

We have approved the approach to contract interpretation, including the parol-evidence rule, found within the Restatement (Second) of Contracts. Two principles have to be bridged: (1) the rule that parol evidence is admissible to establish the meaning of a contract, and (2) the rule that parol evidence is inadmissible to contradict (or in some cases supplement) a term of a contract. *See* Restatement (Second) of Conts. § 214(c), at 132–33 (Am. L. Inst. 1981); *id.* § 215, at 136. Our cases have adopted the Restatement's method of bridging them. *See, e.g., Soults Farms, Inc. v. Schafer*, 797 N.W.2d 92, 107–08 (Iowa 2011); *Pillsbury Co.*, 752 N.W.2d at 436.

"It is sometimes said that extrinsic evidence cannot change the plain meaning of a writing, but meaning can almost never be plain except in a context." Restatement (Second) of Conts. § 212 cmt. *b*, at 126; *see Soults Farms, Inc.*, 797 N.W.2d at 107 ("We now recognize the rule in the Restatement (Second) of Contracts that states the meaning of a contract 'can almost never be plain except in a context.' " (quoting Restatement (Second) of Conts. § 212 cmt. *b*, at 126)); *Pillsbury Co.*, 752 N.W.2d at 436 (same); *Fausel v. JRJ Enters., Inc.*, 603 N.W.2d 612, 618 (Iowa 1999) (same). As we have said,

> [A]ny determination of meaning or ambiguity should only be made in the light of relevant evidence of the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties. *But after the transaction has been shown in all its length and breadth, the words of an integrated agreement remain the most important evidence of intention.*

*Fausel*, 603 N.W.2d at 618 (quoting Restatement (Second) of Conts. § 212 cmt. *b*, at 126); *Alta Vista Props., LLC*, 855 N.W.2d at 727 (quoting same); *Pillsbury Co.*, 752 N.W.2d at 436 (quoting same).

Put another way, no determination of meaning or ambiguity should be made by the trial court without first considering: (1) the contract as a whole, and (2) any extrinsic evidence offered by the parties as to the contract's meaning. At this point, if the meaning of a contract term is unambiguous, parol evidence may not be presented to the fact finder to contradict that term under the facade of interpreting it. The command to the trial judge is, in effect: "Don't keep the evidence out until you've looked at it. Once you've looked at it, if the term is

unambiguous, don't allow the evidence to come in for the purpose of contradicting that term."

Moreover, in the final analysis, "the words of the agreement are still the most important evidence of the party's intentions." *Pillsbury Co.*, 752 N.W.2d at 436; *see, e.g., Alta Vista Props., LLC*, 855 N.W.2d at 727 (summarizing the extrinsic evidence and then stating that "our primary focus will be on the language of the [agreement]").

Further, we aim to "interpret every word and every provision of a contract to give it effect, if possible." *Colwell*, 960 N.W.2d at 679. "[A]n interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." *Iowa Fuel & Mins., Inc. v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 863 (Iowa 1991); *see also* Restatement (Second) of Conts. § 203(a), at 92–93 (same). Therefore, we assume in the first instance that no part of an agreement is superfluous. *Smith Barney, Inc. v. Keeney*, 570 N.W.2d 75, 78 (Iowa 1997).

Lastly, "[i]nstruments relating to the same transaction which are contemporaneously executed should be construed together." *Taylor Enter., Inc. v. Clarinda Prod. Credit Ass'n*, 447 N.W.2d 113, 115 (Iowa 1989); *see also* Restatement (Second) of Conts. § 202(2), at 86 ("A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together.").

Yet, at the same time, our Probate Code states,

The assets of a custodial independent retirement account shall pass on or after the death of the designator of the custodial independent

> retirement account to the beneficiary or beneficiaries specified in the custodial independent retirement account agreement signed by the designator or designated by the designator in writing pursuant to the custodial independent retirement account agreement.

Iowa Code § 633.357(2) (2020). This provision goes on to say that IRA accounts "shall not be considered part of the designator's probate estate." *Id.* Thus, section 633.357(2) confirms that the relevant question is, "Who is the designated beneficiary (or who are the designated beneficiaries) *in the IRA agreement*?" The IRA agreement, not the will, controls. *See generally In re Est. of Gantner*, 893 N.W.2d 896, 903 (Iowa 2017) (discussing the special characteristics of IRA inheritance).

**B. Deciding This Case.** We now turn to the question at the heart of the case: Who gets the IRA?

1. *The text of the IRA agreement, including the beneficiary designation.* We start with the text of the agreement. The customized IRA addendum, prepared by Richard, specifically identifies Joan as the "primary beneficiary" with a "100%" share. In addition, on the standard beneficiary form, Richard designated the children as "successor beneficiaries." The instructions for that form conspicuously state that the successor beneficiary designation is "[n]ot applicable if Trust or Estate is beneficiary."

So far, so clear. But the typed addendum also contains several sentences referring to the "Marital Trust." These sentences provide that: (1) Joan is the primary beneficiary of the "Marital Trust" and "she shall be entitled to all annual distributions from my IRA based upon her life expectancy under the then applicable federal income tax rules and regulations"; (2) "[t]he value of such IRA"

shall be included in the Marital Trust "to the extent necessary to achieve the marital deduction which shall result"; and (3) "[t]hat part of my IRA which is necessary to achieve the minimum marital deduction which will result in no federal income tax is devised to the [Marital Trust]." Additionally, the addendum identifies all four children as "contingent beneficiaries" and goes on to say, "Upon the death of my wife, my children . . . shall become the primary beneficiaries . . . ." What is the point of all this?

As the district court pointed out, the value of Richard's estate turned out to be below the threshold for federal estate tax, so it was not necessary to fund the Marital Trust and no assets needed to be transferred to it. Thus, all three of the statements relating to the Marital Trust could be true even with 100% of the IRA going to Joan outright. Also, as the district court noted, one can read the "contingent beneficiaries" section of the addendum simply as saying that if Joan died before the children, the IRA would be distributed to the four children (they would become the "primary beneficiaries"). *See also Est. of Gantner*, 893 N.W.2d at 903 (discussing the difference in how an IRA passes to a surviving spouse versus other beneficiaries). So it is possible to line up the entire addendum with a scenario in which Joan has the status of sole beneficiary and recipient.

But even though it is possible to *reconcile* everything in the addendum with an outright transfer of the IRA to Joan, such an approach renders much of the addendum mere surplusage. Why even talk about the Marital Trust? It also makes little sense to refer to transferring the IRA to the Marital Trust "to the extent necessary to achieve a marital deduction" because that deduction would

be available whether the IRA went to Joan outright or to a trust for her benefit. *See* 26 U.S.C. § 2056(a); 26 C.F.R. § 20.2056(a)-1; *id.* § 20.2056(b)-5(a); *Turner v. Comm'r*, 138 T.C. 306, 316 (2012) ("Generally, an estate may deduct from the value of the gross estate the value of property 'which passes or has passed from the decedent to his surviving spouse.'" (quoting 26 U.S.C. § 2056(a))); *Est. of Eldred v. Comm'r*, 57 T.C.M. (CCH) 721 (T.C. 1989) ("We find that decedent's intent in this case was to pass one-half of his adjusted gross estate . . . to the marital trust. Thus, we find that petitioner is entitled to claim a marital deduction equal to [that amount].").

It also makes little sense to talk about a marital deduction for *income tax* purposes. IRA distributions are generally subject to income tax, 26 U.S.C. § 408(d)(1), but the marital deduction is part of the estate tax, not the income tax. *See id.* § 2056(a).

Lastly, it makes little sense to say that Joan "shall be entitled to all annual distributions from my IRA based upon her life expectancy" if Joan were receiving the IRA outright. The greater may include the lesser. But why refer to the lesser at all if the greater is intended?

Jeffrey contends that reading the primary beneficiary designation as granting the IRA to Joan outright renders all the aforementioned paragraphs superfluous. But the rule against superfluous language is not "the be-all and end-all." *State v. Middlekauff*, 974 N.W.2d 781, 808 (Iowa 2022) (Mansfield, J., dissenting) (quoting William Shakespeare, *Macbeth* act I, sc. 7) (making this point about the analogous rule that statutes should not be construed as containing

surplusage); *see Brazil v. Auto-Owners Ins.*, 3 F.4th 1040, 1043–44 (8th Cir. 2021) ("The canon against surplusage does not require courts to read a contract in a way that contains no surplusage. . . . Here, there is no reasonable interpretation of the Policy that avoids surplusage."); Restatement (Second) of Conts. § 203 cmt. *b*, at 93 ("Even agreements tailored to particular transactions sometimes include overlapping or redundant or meaningless provisions. . . . The preference for an interpretation which gives meaning to every part of an agreement does not mean that every part is assumed to have legal consequences."). It is but one rule of construction.[2]

2. *Extrinsic evidence offered by Jeffrey.* In addition to the IRA agreement itself, there are various items of extrinsic evidence.

Jeffrey maintains that the IRA beneficiary designation must be read in conjunction with Richard's 2010 will. Notably, the 2010 will contemplated that Richard's daughter, Lynn, would receive distributions from the IRA (even though no such distributions could be guaranteed if the IRA passed outright to Joan). It also contemplated that upon Joan's death, "the balance of my IRA shall pass to and be distributed under the [Family Trust]." Again, Richard's effort to maintain postmortem control over the IRA assets seems inconsistent with an outright transfer of those assets to Joan.

---

[2]Jeffrey also points out that the IRA designation refers to Joan as "*a* primary beneficiary" under Richard's IRA and "*the* primary beneficiary" under the Marital Trust. He contends that the different articles should have different meanings. However, Jeffrey overlooks that the heading simply refers to Joan as "Primary Beneficiary" (i.e., with no "a" or "the"). And, in any event, the article "a" does not inherently create conflict; Joan could be both a primary beneficiary and the only primary beneficiary at the same time.

But the 2010 will is not part of the IRA agreement. *See* Iowa Code § 633.357(2); *see also In re of Est. of Wood*, No. 80645–9–I, 2020 WL 1893671, at *3 (Wash. Ct. App. Jan. 21, 2020) (explaining that because an IRA is a nonprobate asset, a contemporaneous will can be considered only as extrinsic evidence). The IRA agreement, including the beneficiary designation, does not refer to the will or incorporate it by reference. Thus, the 2010 will is at most extrinsic evidence as opposed to part of the IRA agreement itself.

Also, Richard revoked the 2010 will and replaced it with the 2014 will. In the latter, more recent will, he provided:

> [Joan] shall be entitled to all of the required distributions from such IRA during her lifetime and upon her death . . . , then the balance of my IRA shall pass to and be distributed as set forth in the beneficiary designation on file with U.S. Bank, N.A. as Trustee of the IRA Trust established by me.

This language is potentially confusing because the IRA beneficiary designation seemingly gives the IRA to Joan outright, not merely for her lifetime—but it is notable that the 2014 will no longer refers to the Family Trust as a recipient of IRA assets.

Jeffrey also points to Richard's pre-2010 wills and IRA beneficiary designations as additional extrinsic evidence. For example, in prior 1998 and 1999 IRA beneficiary designations, it was expressly provided that the IRA would go to the Marital Trust. This is a double-edged sword, because the 2010 IRA beneficiary designation was worded quite differently, and Richard's former secretary testified in the offer of proof that Richard went over it quite carefully.

This suggests that maybe Richard did intend to make a change in 2010, which is exactly what U.S. Bank and Joan claim.

Additionally, Jeffrey adduced testimony from various witnesses (including himself) that Richard had kept Joan on an allowance during their lifetimes and that it would have been inconsistent with Richard's practice to give her all the IRA assets outright after he died. Further, Jeffrey offered documentary evidence to try to show that after Richard passed away, U.S. Bank's initial review concluded that the Marital Trust was the beneficiary of the IRA. We think Jeffrey's evidence actually doesn't go that far; we believe it demonstrates only that U.S. Bank was for a while uncertain as to the appropriate IRA beneficiaries.

Finally, Jeffrey offered evidence that Richard was a sophisticated attorney with an astute grasp of estate planning. This too is a double-edged sword. Given Richard's legal skills, assuming he *wanted* to transfer the IRA upon his death to the Family Trust, we would expect this to be self-evident from reading the documents he drafted.

3. *Interpreting the IRA beneficiary designation.* As we have discussed above, the trial court should not shut the door to extrinsic evidence without first examining it. (And in reality, we believe the district court here did examine the extrinsic evidence before discounting it.) Likewise, in undertaking our appellate review of the district court's ruling that the IRA should go to Joan, we too will look at the extrinsic evidence. We consider Jeffrey's extrinsic evidence to the extent it "sheds light on the situation of the parties, . . . the attendant circumstances, and the objects they were striving to attain." *Kroblin v. RDR*

*Motels, Inc.*, 347 N.W.2d 430, 433 (Iowa 1984). But at the end of the day, our job is to decide what the IRA agreement says, not what Richard may have intended. Jeffrey's evidence cannot be used to vary the express terms of the agreement. *See id.*

Yet even giving Jeffrey's extrinsic evidence every benefit of the doubt, we too agree that the beneficiary provision transferring the IRA is unambiguous and that Joan should receive the IRA. We are unable to accept Jeffrey's position that the IRA agreement makes the Family Trust the beneficiary of the IRA when that trust is not even named in the IRA agreement. Joan must be the primary beneficiary because that is the only interpretation that can be squared with the actual wording of the beneficiary designation. Richard may have intended something different, but he didn't achieve that end. Significantly, Jeffrey hasn't sought reformation based on mistake. He doesn't argue that Richard made an inadvertent error; he argues that the Family Trust is the actual, designated beneficiary of the IRA. *Cf. Ciampa v. Bank of Am.*, 35 N.E.3d 765, 768–69 (Mass. App. Ct. 2015) (discussing reformation claim where the IRA beneficiary form named "a person who does not exist").

Under U.S. Bank and Joan's interpretation, there is concededly some puzzling language in the IRA beneficiary designation. But those imperfections pale in comparison to the difficulties with Jeffrey's interpretation. Jeffrey would have the IRA go to a phantom beneficiary not named in the IRA beneficiary designation rather than the person specifically identified as the 100% primary beneficiary. Jeffrey asks the courts to find, in effect, that the language of the

2010 will outweighs the language of the 2010 IRA beneficiary designation, even though the 2010 will was revoked in 2014 and the 2010 beneficiary designation was reaffirmed in 2017.

Civil litigation is not a quest for perfection. Often judges and juries must deal with a messy situation and decide what outcome, under the law and evidence, makes the most sense—even if it doesn't make perfect sense. When all is said and done, Jeffrey's interpretation is far more of a reach than simply reading the IRA beneficiary designation as containing surplusage and reflecting some misunderstanding about the marital deduction and federal income tax. Jeffrey's briefing does an excellent job of pointing out the flaws in U.S. Bank and the district court's interpretation, but he does not address the far greater flaws in his own interpretation. We affirm the district court and the court of appeals on this point.

**C. Whether U.S. Bank Acted Improperly in Bringing This Action for Declaratory Judgment.** Jeffrey also argues on appeal that U.S. Bank was not allowed to bring an action for declaratory judgment and initiate these proceedings; it could only file an interpleader action. Jeffrey argues that a conflict of interest existed between U.S. Bank's role as estate co-executor and IRA trustee such that U.S. Bank could not have taken a stance on interpreting the IRA designation. Alternatively, he contends that serving as Joan's advocate exceeded U.S. Bank's contractual authority. For these additional reasons, Jeffrey asks that the judgment be reversed and this case remanded for a new trial.

Jeffrey cites no Iowa authority in support of his position that U.S. Bank acted beyond its authority by filing a petition for declaratory judgment rather than an interpleader action. For example, he cites *Rowen v. Le Mars Mutual Insurance Co. of Iowa*, 282 N.W.2d 639, 645 (Iowa 1979) (en banc), which is a stockholder derivative case, not a lawsuit brought by the trustee of an account.

Our interpleader rule is discretionary; it states that "[a] person who is or may be exposed to multiple liability or vexatious litigation because of several claims against the person for the same thing, *may* bring an equitable action of interpleader against all such claimants." Iowa R. Civ. P. 1.251 (emphasis added).

Logically, it strikes us that this case would be in the same posture regardless of the form of action filed by U.S. Bank. Either a declaratory judgment or an interpleader action would have resulted in a legal determination of the IRA beneficiaries. Jeffrey disregards the fact that Joan's conservator appeared through counsel and participated in the proceedings below. Joan's conservator examined witnesses, filed briefs, and argued—along with U.S. Bank—that Joan was entitled to the IRA. Presumably Joan's conservator would have done more to carry the ball if U.S. Bank had been neutral. But the underlying facts and law would have been the same as they are now.

The district court ultimately removed U.S. Bank as co-executor based on a clause in the 2014 will stating that if Jeffrey was "dissatisfied with the services provided by [U.S. Bank] . . . he may select and determine a successor corporate Co-Executor." But even if we assume that U.S. Bank had a conflict of interest in serving as both co-executor and IRA custodian, Jeffrey fails to explain why that

would necessitate a do-over of the declaratory judgment proceeding. Jeffrey does not explain how that conflict could have affected the final interpretation of the IRA beneficiary addendum.

In the end, Jeffrey's arguments really go to the question of whether and how much in attorney fees U.S. Bank is entitled to recover—an issue as to which Jeffrey has filed a separate appeal.

**V. Conclusion.**

For the foregoing reasons, we affirm the judgment of the district court and the decision of the court of appeals.

**DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Waterman and May, JJ., who take no part.